IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| POST ACCUTE MEDICAL, LLC | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. |
| | § | 1:19-CV-01137-SHR |
| CHRISTOPHER LEBLANC AND | § | |
| MERIDIAN HOSPITAL | § | |
| SYSTEMS CORPORATION | § | JURY TRIAL DEMANDED |
| | § | |
| DEFENDANTS. | § | |

## DEFENDANTS' RESPONSE TO STATUS CONFERENCE ORDERED RELATING TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

COMES NOW, Defendants Christopher LeBlanc and Meridian Hospital Systems Corporation (collectively referred herein as "Defendants") and files this response for the **status conference** set for July 9, 2019, regarding Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunctive Relief. The Buzbee Law Firm entered an appearance as counsel for Defendants.[1]  Defendants reserve the right to fully brief the Court if further hearing is set, and the limited

---

[1] Counsel for Defendants is aware that a *Pro Hac Vice* is needed and is diligently getting that matter resolved. Further, in an abundance of caution, and as instructed by the Clerk for Hon. John Jones, counsel for Defendants may file an appearance in light of the TRO filed by Plaintiff and pending *Pro Hac Vice* Pro Hac.

appearance is subject to any FRCP 12(b) motions, and does not serve as an answer

to the complaint.

## SUMMARY

1. The underlying and initial Texas state case was filed April 3, 2019, against PAM and Key Management Group, LLC (not a party in this filing). Extensive discovery has occurred. Five depositions took place in Houston, Texas. Six hearings have been held. Rulings from the State Court are imminent. Specifically, this motion directly relates to a hearing held on June 26, 2019, and any dispute should be addressed to the underlying Court or raised at the Temporary Injunction Hearing which is currently set on the Texas Court's docket.

2. Plaintiff presented a matter to this Court that is subject to parallel state court proceedings pending in Houston, Texas and Defendants now request that this federal case be stayed, abated, or dismissed in the Court's discretion. There is no hardship or injury inflicted upon PAM by continuing the Texas state litigation, and such stay promotes judicial economy.

3. This lawsuit is retaliatory and should not be permitted to continue pursuant to the Court's discretionary right to stay or dismiss the case and avoid piecemeal litigation.

4. PAM did not file a notice of removal in Texas as there is no diversity, thus this case should not be in federal court.

5. Amount in controversy does not exceed $75,000. In fact, Meridian agreed to return such requested data as an additional service under the parties' agreement for the amount of $8,500 (less than the required amount in controversy). Thus, this case should not be in federal court.

6. Texas has an interest in claims pursuant to Texas Statute – TEX.CIV.PRAC.&REM.CODE §134A, and to protect its citizens from patient care disclosure alleged here.

7.    The parties expressly agreed that Texas state law applies in all 3 contractual agreements between the parties, and Texas is not inconvenient.

8.    Pursuant to the parties' express agreement, Defendants are contractually permitted to DESTROY the data complained about in this vengeful lawsuit.  Defendants offered repeatedly to destroy the data upon confirmation that PAM would not argue "spoliation" by the destruction. Meridian has repeatedly tried to destroy such data. PAM refuses to agree to permit Meridian to destroy the data under the contract.

9.    PAM continued to request that Meridian return Protected Health Information ("PHI) and Electronic Protected Health Information ("EPHI") despite the contractual provision permitting destruction. Meridian offered to return such data and issued an invoice in the amount of $8500 for the additional services and PAM refuses to submit payment. Thus, Meridian has repeatedly requested to delete all EPHI in light of the pending Texas litigation.

10.   This TRO motion arises from non-evidentiary statements during a Texas hearing. The Court expressly noted the statements were not evidence and not confidential. In response to PAM's filing of two affidavits stating that only "dummy data" was disclosed by its vendor on the internet. The affidavits stated that "Calvery Leonam" was not a patient of PAM.  Meridian disputes this claim. Regardless, such disclosure by PAM and its contractors is for the Department of Justice, and not for the Texas hearing or this Court.

11.   PAM should seek relief from Texas Court.

## FACTS

## A.    BACKGROUND OF TEXAS LITIGATION

The underlying case is a trade secrets misappropriation case which was originally filed against Post Acute Medical, LLC and its affiliates (collectively referred to as PAM) and Key Management Group, LLC ("KMG") **on April 3, 2019**

3

**in Houston, Texas**.  A Temporary Restraining Order was issued against PAM, and KMG, its third party healthcare developer on April 3, 2019.[2]  PAM responded by filing an Anti-SLAPP motion to dismiss the case.  The matter was argued and is pending before The Honorable Kristen Brauchle Hawkins in the 11th Judicial District in Texas, Cause No. 2019-23790.[3]

Based on **new evidence**, Meridian filed a second application for temporary restraining order on June 26, 2019, when it was determined that KMG improperly published Meridian's trade secrets and PAM's HIPAA protected health information on the internet. The application was heard before an ancillary court due to the unavailability of the 11th Judicial Court.  At the TRO hearing, PAM denied that PHI was disclosed and submitted affidavits swearing that no PHI was disclosed.[4] As a result of the TRO filing, KMG immediately removed the patient data and trade secrets.[5]  Counsel for KMG even stated that (1) whether a trade secret exists; and

---

[2] See Exhibit A, order granting TRO.

[3] See Exhibit B. The hearing was held on June 17, 2019, and if the Court does not rule by July 17, 2019, PAM's motion will be denied by operation of law. It should be noted that Texas's current version of the statute related to Strategic Lawsuits against Public Participation statute is the harshest.  As of September 1, 2019, the state legislature amended the statute to EXCLUDE trade secrets cases.

[4] See Exhibit C and D.

[5] See Exhibit 13. Page 41-42.

THE COURT: Ms. Mery, I think one of the things that concerns me about this is that when you were called about this, your response wasn't, it's not a trade secret. We didn't do anything wrong.

(2) whether it is protected will be litigation in this case. Regardless - such disclosure was a violation of its own non-disclosure agreement with PAM, and the agreements between PAM and Meridian. The Court required KMG to announce in open court that it would not re-publish the information and set the matter for Temporary Injunction hearing before the 11th Judicial Court.[6]

### B.   HISTORY BETWEEN PAM HOSPITALS AND MERIDIAN

Meridian and PAM worked together for six years to efficiently run PAM Defendants' hospitals.  The long-term acute hospitals are **primarily located in Texas and the agreements provide that Texas law applies**. PAM expressed an interest in a buyout of Meridian and discussions were underway when PAM sent notice of termination of Meridian's contract. The termination also requested a 6-month extension immediately raising red flags. It was soon revealed that PAM had retained another software developer to **improperly** reverse engineer Meridian's applications in contradiction to the agreement.  The depth of the misappropriation

---

Why are you bothering me with this? Your response was: Okay. We will take it down, and we won't do it again.  Why are you taking it down if you don't think it's a trade secret? ***
We don't want to have unnecessary fights. The issue of whether it's a trade secret or whether it's protected, that's going to be litigated in this case. That's an ongoing issue. It's not getting resolved today.

[6] See Exhibit B, and Exhibit 13 to Plaintiff's Motion, P. 46.

THE COURT: Are you representing to this Court that your client will not do something along this line again?
MS. MERY: I mean, absolutely.

was soon revealed as PAM created a playbook of Meridian's trade secrets and handed it over to Meridian's software competitor KMG.  Through discovery, it was made clear that PAM improperly gave login credentials and direct access to Meridian's server and applications. Now, PAM seeks to retaliate against Meridian by filing this lawsuit after Meridian's discovery that KMG disclosed protected information.

## C.   PAM AND MERIDIAN AGREEMENTS – TEXAS LAW

PAM Defendants operate 30 hospitals, primarily in Texas[7] and hired KMG to copy, mimic and study Meridian's software applications for its Texas hospitals after PAM's failed attempts to buy-out Meridian. KMG is a direct competitor of Plaintiff, and advertises as a healthcare software developer. KMG wrongfully interfered with PAM and Meridian's contract by accessing Meridian's application without authorization – which was expressly prohibited by the agreements between PAM and Meridian. This access was a road map for KMG to create and mimic Meridian's application thereby reducing time and expense in creating and mapping for itself.

---

[7] See E1, Texas Amended Pleading and Exhibit A(1), SBAA showing Texas locations: San Antonio, Westover Hills, Thousand Oaks, Allen, Kyle, Corpus Christi, Luling, Round Rock, Victoria, Clear Lake, San Antonio, New Braunfels, Victoria North, Victoria South, Texarkana, Corpus Christi North, Corpus Christi Bayfront, Beaumont, Lufkin.

Meridian spent nine years and millions of dollars developing healthcare software applications including Pinpoint (includes Discharge Calendar) and MedNarrative.[8]  PAM retained Meridian to provide its unique applications to its hospitals in Texas to improve efficiency and the ability to integrate the data into a user-friendly format.[9]  Essentially, the applications had the function to take archaic data and assimilate it into readily and workable format.  Due to the highly sensitive and proprietary nature of the applications, Meridian required all persons with access to the applications and each hospital to sign a confidentiality agreement, and Meridian issued a unique sole user identification number and password for access to its applications pursuant to an agreement.[10]

### 1.   SBAA - Meridian's Pinpoint and MedNarrative Applications - Expressly Confidential

PAM expressly agreed to limit access to Meridian's software, and to prevent unauthorized access to is applications.  In the Services and Business Associate Agreement ("SBAA" or "License Agreement") executed between Meridian and PAM, PAM agreed the applications were confidential:

### H.   CONFIDENTIALITY

1. All information disclosed by either Meridian, PAM or Hospitals as a "Disclosing Party" to the other party as a "Receiving Party" or otherwise

---

[8] See Exhibit E.
[9] See Exhibit E.
[10]See Exhibit E1 (SBAA) and E2 (User Agreement).

learned by the Receiving Party in collection with performance of the Services that is specifically identified in writing as confidential, (collectively, "Confidential Information") shall be treated by Receiving Party as confidential information of the Disclosing Party. PAM and Hospitals acknowledge that the **Pinpoint®, MedNarrative, and Ql Health Software and the terms of this Agreement are Confidential Information of Meridian**.

Meridian took further steps to protect dissemination of its protected work. Not only did the SBAA expressly restrict access to single users, but each hospital and user had to sign a separate agreement.  Pursuant to Paragraph A.2 of SBAA,[11] sole user Meridian Login IDs and passwords were provided to PAM Affiliated Campuses employees who would use Pinpoint®, MedNarrative and Q1 HealthSoftware.  **Each Login ID and Password was to be used only by a single user.**

## 2.     Single User Login Credentials Prohibited Sharing

PAM employees were issued login credentials pursuant to an Authorized User Agreement to Terms of Access to Data Through the Executive Decision Support System Pursuant to A Limited License, ("User Agreement") which made reverse engineering improper, and PAM agreed it would not try to learn the structure or ideas underlying the software:[12]

2.2     This Agreement grants you a nonexclusive, nontransferable right to use the Network, subject to the following restrictions:

---

[11]  See Exhibit E1. (SBAA found at A (1), p.1.)
[12]  See Exhibit E2.

     a.     This right is specific to you. You may not share, sell or sublicense this right with anyone else.

     b.     You may not change, **reverse engineer, disassemble or otherwise try to learn the source code, structure or ideas underlying the Network software** or introduce a virus to the Network. You may not connect or install unauthorized or uncertified equipment, hardware or software or improperly use the hardware or software relating to use of the Network.

Each Permitted Use provided for exclusive use and such use was conditioned on an agreement that **expressly prohibited** reverse engineering, disassembling the software, or learning the source code or ideas underlying the software. Further, the User Agreement provided that the issued password could not be shared, including by a person acting on the behalf of PAM.

> You will not release your authentication code or device or password to **any other person, including any employee or person acting on your, or the Hospital's, behalf.** You will not allow anyone else to access the Network under your authentication code or device or password. You agree not to use or release anyone else's authentication code or device or password. **You agree to notify Meridian and Hospital immediately if you become aware or suspect that another person has access to your authentication code or device or password.**

See ¶ 2 of A(2). In no uncertain words, access and exposure to the confidential information were limited to the Users and Hospitals to the User Agreement. PAM and Meridian also agreed that the User Agreement would be governed by and construed in accordance with the State of Texas.[13]

---

[13] Exhibit E2, Page 4, Paragraph 8.4.

Nonetheless, on February 12, 2019, KMG and PAM entered into a Master Services Agreement to develop and replace Meridian's applications: MedNarrative and Discharge Calendar. The scope of the agreement was clear as delineated by the Statement of Work which incorporated the PAM requirements which included screenshots, descriptions of Meridian's functionality and logic and Meridian's proprietary information.  Thus, it is clear that KMG was retained to mimic the software applications as stated in the Statement of Work which included "requirements" or a thesis on Meridian's applications.

At no time did PAM or KMG request access to Meridian's confidential information from Meridian. KMG did not sign the User Agreement and should not have had direct access to the servers or the applications.[14] KMG knew that it was wrongfully accessing the software and testified that it would not give out its own credentials to a third party to access their system.

The issue at hand relates to KMG publishing patient data care and Meridian's trade secrets, and the upcoming Temporary Injunction hearing set August 12, 2019, wherein evidence will be presented to the Court regarding any disclosure.  Defendants request that this Court abstain from the case pending the State matter.

## **ARGUMENT**

---

[14] See Exhibit E3.

## A.     ABSTENTION DOCTRINE FAVORS STAY OR DIMISSAL

Meridian prays that this Court will respectfully defer pursuant to the doctrine of abstention.  Here, there is no federal jurisdiction and PAM has not filed a notice of removal to federal court.  This is a duplicative and parallel proceeding.  It is also a reactive suit to the pending lawsuit in Texas in order for PAM to seek a tactical advantage over Meridian.  Here due to the (1) similarity of issues; (2) same parties; and (3) priority of suit, and applicable factors relating to a federal court's power to stay a case.

Historically, the abstention doctrine provides that as a matter of policy a federal court should abstain from deciding matters where the federal court's decision would cause undue interference with pending state proceedings. *Younger v. Harris*, 401 U.S. 37 (1971); See *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) ("NOPSI") ("[T]here are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do.' ") (quoting *Younger*, 401 U.S. at 45); *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010) ("In certain circumstances, district courts must abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding.").

More recently, Pennsylvania courts have recognized federal courts' power to stay cases.  Defendants direct the Court to *Barbato v. Crown Asset Mgmt. LLC*, CV 3:13-2748, 2019 WL 1922083, at *2 (M.D. Pa. Apr. 30, 2019).  There the "power to stay is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication." *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994). The court has wide latitude in deciding whether to sever and stay proceedings by weighing the competing interests of the parties and attempting to maintain a fair balance. *Cooper v. Metlife Auto & Home*, 2013 WL 4010998, *2 (W.D. Pa. Aug.6, 2013). "In determining whether to grant a motion to stay, courts should consider: (1) the length of the requested stay; (2) the 'hardship or inequity' that the movant would face in going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; (4) whether a stay will simplify issues and promote judicial economy." *Structural Grp., Inc. v. Liberty Mut. Ins. Co*., 2008 WL 4616843, at *5 (M.D. Pa. Oct. 16, 2008).  These factors are in line with *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). There, in assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum, cf. *Gulf Oil Corp. v. Gilbert, 330 U.S.501 (1947)*; the desirability of avoiding piecemeal litigation, cf. *Brillhart v. Excess Ins. Co., 316 U.S. 491,495 (1942)*; and the order in which jurisdiction was obtained by the

concurrent **[*4]** forums, *Pacific Live Stock Co. v. Oregon Water Bd., 241 U.S. 440,*

*447(1916).* No one factor is necessarily determinative; a carefully considered

judgment taking into account both the obligation to exercise jurisdiction and the

combination of factors counselling against that exercise  is required. See *Landis v.*

*North American Co.,supra, at 254-255.* Only the clearest of justifications will

warrant dismissal.

Here, all factors weigh heavily in favor of a stay or dismissal. The length of

stay is minimal.  A ruling is anticipated within the month on the underlying case. If

it proceeds, the matter will be set for trial as extensive discovery has occurred on

the underlying merits.  All the parties are not joined in federal court, and there is

no injury inflicted upon PAM as it could receive immediate recourse in Texas state

courts.  Numerous hearings have occurred, and there are pending rulings in the State

of Texas. A stay or a dismissal of the federal action would avoid friction between

state and federal courts, and free litigants from the burden of duplicative litigation

and avoid unnecessary costs.

In the Court's discretion, Meridian requests that the federal case be stayed.

## B.   PARTIES AGREED TO DESTRUCTION OF PHI AND EPHI IN THE BUSINESS ASSOCIATE ADDENDUM

It should be noted that Meridian agreed to (1) destroy the data; or (2) return

pursuant to the fee contemplated by the SBAA. PAM's own Business Associate

Addendum[15] ("BAA") provides that Meridian has the right to destroy all PHI and EPHI.

> [Meridian] shall return to [PAM] **or destroy** all such PHI and EPHI, plus all other PHI and EPHI in its possession, and shall retain no copies. If [Meridian] believes that it is not feasible to return or destroy the PHI and EPHI as described above, [Meridian] shall notify PAM in writing.

Due to the pending litigation, Meridian requested confirmation that the PHI and EPHI could be destroyed pursuant to the BAA. See Plaintiff's Exhibit 4 to its motion. PAM refused to agree to the destruction, despite the litigation hold related to the pending matter and to avoid any spoliation claims. Instead, PAM requested return of the patient data without regard to the time and expense to return such. As this was an additional service, Meridian submitted an invoice and PAM refused to pay for the return.

This current lawsuit arises out of the hearing on the June 2019 TRO application. Meridian sought to have PAM's "copyrighted" and owned software identifying patient name and diagnosis, along with Meridian's work product removed from the internet. In response, PAM submitted affidavits from two executives at PAM stating that "Calvery Leonam" was not a patient of PAM. See Exhibit C and D. Now, PAM seeks to assert that the same information that was known to Meridian, and rightfully in the possession of Meridain is an EPHI and PHI violation. The

---

[15] See Exhibit 1 to Plaintiff's Motion, p. 4, paragraph IX C of the Business Associate Addendum.

conundrum is self-evident.  Is it patient data and PAM misrepresented to the Court, or is it not?  Regardless, the Court noted as pointed out in PAM's motion, p. 11, that any statement was not evidence. Regardless, this matter should be addressed in the underlying state case.

### C.    SPOLIATION PROHIBITS MERIDIAN FROM DESTRUCTION

Meridian repeatedly requested confirmation that it could destroy all PHI and EPHI as contemplated by the parties' agreement in order to avoid any spoliation argument by PAM.[16] Litigation was pending, and all parties had legal counsel. Although in conflict, Meridian did not want to unilaterally destroy information that it knows or should know could be evidence in the pending matter.  "[T]here must be a sufficient foundational showing that the party who destroyed the evidence had notice both of the potential claim."  *cf. Nat'l Tank Co. v. Brotherton,* 851 S.W.2d 193, 204 (Tex.1993) (stating objective test for when litigation may reasonably be anticipated). *Wal-Mart Stores, Inc. v. Johnson,* 106 S.W.3d 718, 722 (Tex. 2003). Here, Meridian filed suit and did not want to provide an argument for discovery abuse.

### D.    TEXAS LAW APPLIES TO THE UNDERLYING MATTER

---

[16] See Exhibits G-J.

The parties expressly agreed to Texas law from the outset for the breach of contract causes of action alleged thus Texas is not an inconvenient forum.[17] A majority of the hospitals pursuant to the SBAA are located in Texas, the contract was breached in Texas, the trade secret is owned in Texas, the theft occurred in Texas. Thus, the parties agreed contractually and there is no undue hardship as PAM has Texas counsel and actively participating in the state case.

## CONCLUSION AND PRAYER

Defendants request that this case be stayed or dismissed pursuant to the Court's inherent power.

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By:  */s/ Caroline Adams*
Anthony G. Buzbee
tbuzbee@txattorneys.com
State Bar No. 24001820
Caroline Adams
cadams@txattorneys.com
State Bar No. 24011198
JP Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas  77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

---

[17]  See E1, SBAA p. 7, ¶ 5 of the SBAA, and Exhibit E2  ¶ 8.4 of the User Agreement, and XII(B) of the Business Associate Addendum – all provide that Texas law applies.

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this document has been duly served on all  known counsel of record and pro se parties in accordance with the Federal Rules of Civil Procedure on July 8, 2019, via electronic filing.

/s/*Caroline Adams*       _
Caroline E. Adams