STATE OF TEXAS                                §
                                              §
DALLAS COUNTY, TEXAS                          §

### AFFIDAVIT OF CHRISTOPHER LEBLANC

1. My name is Christopher LeBlanc. I am over the age of twenty-one, am fully competent to make this affidavit, have personal knowledge of the facts and statements in this affidavit, and each of the facts and statements are true and correct.

2. I am the chief executive officer of Meridian Hospital Systems Corporation ("Meridian"). After owning and operating hospitals in Texas and Louisiana, I recognized a need in the industry to streamline patient care data. As a result, I hired a team and personally spent over 20,000 hours developing software for Meridian with my team beginning in 2010. Development costs have exceeded $10 million in designing, implementing and developing various software to make long term acute care hospitals, inpatient rehabilitation hospitals, acute care hospitals, short stay surgical hospitals, surgery centers, outpatient clinics, and other healthcare providers more efficient. I am unaware of any comparable software on the market.

3. Approximately six years ago, Meridian contracted with Post Acute Medical ("PAM") to provide software to its long term acute care and inpatient rehabilitation hospitals and to provide a limited license subscription to Meridian Hospital Systems Corporation's Pinpoint® Software Application. Since that time Meridian developed several additional Software Applications utilizing the Pinpoint® functionality and infrastructure. In June of 2018 PAM entered into a 1 year agreement to license the Pinpoint, MedNarrative, and Q1 Health Software Applications. The current contract is incorporated herein and attached as Exhibit 1 to my affidavit effective June 2018. As result of the current number of hospitals, PAM pays a monthly fee of $59,600 for use of the software. Additionally, Meridian expressly protected its use of the software for patient care only in its Authorized User Agreement to the Terms of Access to Data Through Meridian Software Pursuant to A Limited License Granted to User is attached as Exhibit. 2 Meridian provides services to locations across Texas, including Harris County, Jefferson County, Bexar County, and Dallas County.

4. Pinpoint®, MedNarrative, and Q I Health Software are unique to the market. I have personally taken tremendous efforts to protect and keep the sole and exclusive ownership of all right, title and interest in and to the software, including releases, modifications, enhancements, customizations and derivative works protected and exclusive as I have dedicated nearly a decade to the software.

5. Meridian was able to assemble complex and voluminous data and transfer to user-friendly and functional formats by synthesizing data in a global and readable format.

6. Confidentiality was key to protecting Meridian's investment. To keep software from the public purview, Meridian required a confidentiality clause, recognition of proprietary protection and a sole user express side agreement. Pursuant to the Authorized User Agreement, each user was to have a User Id and Password ("Login") unique to each user. See Exhibit 2. The Login was to be used by a sole user, and not shared even within department or hospital.

7. On February 28, 2019, Meridian received a Notice of Non-Renewal of the Agreement from Kristen Smith, Executive Vice President of Development and Hospital Analytics for PAM. The notice indicated that the Agreement would terminate on June 12, 2019. In the letter Kristen Smith asked for an extension of the Agreement to December 31, 2019 and also stated that "PAM is unable to continue the relationship in the manner previously outlined".

8. In March, Meridian determined that there was a threat on the system and disabled user Sajeev Thomas's login credentials due to suspicious activity from India and simultaneous logins from Pennsylvania and India from the Thomas username/password combination. Simultaneous login is a breach of the services contract, and violates the confidentiality clause and wrongfully exposes non-user to the software. Mr. Thomas submitted a Live Chat Ticket when his login was suspended. Mr. Thomas stated that the login was intentionally given to a company in India for a PAM project. Mr. Thomas positively stated that the PAM project was **not** for patient care and that it was an "internal project" to "document the software" with a company in India. PAM's legal officer admitted Thomas gave credentials. Exhibit 3. Further, the simultaneous logins are clear. Exhibit 4. See February 27, at 6:16.

9. Meridian notified PAM and Thomas that it was a violation of his user agreement, and that he was disclosing confidential information that was protected as confidential business information, specifically Meridian's proprietary software.

10. Kristen Smith, Executive Vice President of Development and Hospital Analytics for PAM, then stated they were trying to build and create a comparable system and was aware the login was being used not solely for patient care.

11. A cease and desist letter was sent by Meridian to PAM, and PAM stated that it was an isolated event unique to Mr. Thomas and stated that it wanted to continue its relationship with Meridian. However, upon discovery, the Chief Executive Officer of PAM told me that PAM wanted to take the existing software and "make it better" by text message on March 27, 2019. Exhibit 5.

12. Anthony Misitano, the Chief Executive Officer of PAM, has repeatedly told me that they were trying "to make [the software] better" and "Perhaps we go forward with our plan to build our own."

13. Upon information and belief, it was just determined that another authorized user who accessed the software sporadically in the last 6 months had increased views from 600

pages to 7,000 in the last several weeks, and such access is not for patient care. Due to this access, Meridian has the firm belief that PAM is using the software in violation of the requirement for patient care. Exhibit 6.

14. This belief is confirmed by Robert Tribeck, Chief Legal Officer for PAM, statement "My expectation is that the 'suspicious login activity' was actually him trying to get a better understanding of the system".

15. The software applications could not be replicated on its own without direct access to the software. Access provides a model and template and the necessary data requirements. By providing access to the software by an unauthorized user ID and password, GUI or graphical user interface and the data requirements for the design was readily available to PAM and Key Management Group ("KMG"), its software developer.

16. Meridian seeks to remove all users to the software due to the acknowledgment that they have retained KMG in New York to study and design the software and given access to the protected business and confidential information and property of Meridian.

FURTHER AFFIANT SAYETH NAUGHT

_____
CHRISTOPHER LEBLANC

April 2, 2019
DATE

SUBSCRIBED AND SWORN TO ME BEFORE THIS 2nd day of April, 2019.

_____
Notary Public In and For the
State of Texas

JOSEPH TASSE
My Notary ID # 130858892
Expires October 11, 2020

## SERVICES AND BUSINESS ASSOCIATE AGREEMENT

This Services and Business Associate Agreement (this "Agreement") is made as of June __, 2018 (the "Effective Date"), by MERIDIAN HOSPITAL SYSTEMS CORPORATION ("MERIDIAN"), with offices at 8117 Preston Rd, 3rd Floor, Dallas, Texas 75225 and POST ACUTE MEDICAL, LLC ("PAM"), with corporate offices at 1828 Good Hope Road, Suite 102, Enola, PA 17025.

WHEREAS, this Agreement sets forth the terms and conditions under which Meridian will provide to PAM a version of the Pinpoint®, MedNarrative, and Q1 Health Software solely for internal evaluation and use by PAM on the PAM Affiliated Campuses listed in Schedule 2 ("Hospitals"), attached hereto and incorporated herein, only;

WHEREAS, another purpose of this Agreement is to comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and implementing regulations promulgated in the Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. Part 160 and Part 164, Subparts A and E (the "HIPAA Privacy Rule");

WHEREAS, Each PAM Affiliated Campus acknowledges that it is, or may be deemed to be, a "Covered Entity," and Meridian acknowledges that it is, or may be deemed to be, a "Business Associate" of each PAM Affiliated Campus, as those terms are defined in the HIPAA Privacy Rule; and

WHEREAS, PAM and Meridian agree that this Agreement, along with the Business Associate Addendum, constitutes a Business Associate Agreement for purposes of compliance with the HIPAA Privacy Rule. Specifically, this Agreement is intended to ensure that Meridian will establish and implement appropriate safeguards relating to Protected Health Information ("PHI"), as defined herein in accordance with the HIPAA Privacy Rule, that it may create, receive, use, or disclose in connection with functions, activities, or services provided by Meridian to PAM Affiliated Campuses.

NOW, IN CONSIDERATION of the foregoing premises, and other good and valuable consideration, the receipt of which is hereby acknowledged, Meridian and Hospitals agree as follows:

### A. SUBSCRIPTION TO PINPOINT®, MEDNARRATIVE, AND Q1 HEALTH SOFTWARE

1. Meridian grants to PAM a non-exclusive, non-transferable, limited license for use by PAM Affiliated Campus employees to access and use the Pinpoint®, MedNarrative, and Q1 Health Software solely for a PAM Affiliated Campus' internal operations. PAM shall pay the Fees and Charges described in Section D for each PAM Affiliated Campus listed on Schedule 2.

2. Hospitals may provide to Meridian login IDs and passwords for those employees of PAM Affiliated Campuses who will use the Pinpoint®, MedNarrative, and Q1 HealthSoftware ("Users"). Each login ID and password may only be used by a single User. Hospitals will ensure that all Users protect and safeguard all passwords from unauthorized use or disclosure. Meridian reserves the right to deny access to any party at its sole discretion.

3. Meridian shall use commercially reasonable efforts to make the Pinpoint®, MedNarrative, and Q1 Health Software available to Hospitals. Meridian shall not be responsible to the extent the Pinpoint®, MedNarrative, and Q1 Health Software is unavailable wholly or partly due to any of the following reasons: (i) a Hospital's failure to perform its obligations under this Agreement that affects the performance of the Pinpoint®, MedNarrative, and Q1 Health Software; (ii) events of force majeure; (iii) the performance of third party telecommunications network provider(s); (iv) unforeseen capacity increases; (v) performance of third party software; or (vi) the performance of a Hospital's own network hardware and software. As performance of the Pinpoint®, MedNarrative, and Q1 Health Software is dependent on performance of local area and wide area networks, and software and hardware of third parties and of Hospitals, Meridian shall not be responsible for problems or delays in the Pinpoint®, MedNarrative, and Q1 Health Software due to technical matters beyond its control.

4. Meridian may, from time to time, perform system maintenance, software modifications, hardware upgrades, facility modification and repair, or similar actions, resulting in Pinpoint®, MedNarrative, and Q1 Health Software downtime. When possible, Meridian will give Hospitals advanced notification of such downtime and expected duration.

### B. SUPPORT SERVICES

1. Meridian shall provide the implementation and support services to as set forth in the attached Schedule 1 ("Services"). Services may include database management, maintenance of the Pinpoint®, MedNarrative, and Q1 Health Software, and education and training. If a PAM Affiliated Campus requests Meridian to perform services other than those described in Schedule 1, such other services and the additional charge for such services will be set forth in subsequent Schedule(s) to this Agreement. The Schedule(s) to this Agreement may be updated by mutual agreement of the parties as set forth in this Agreement as necessary or appropriate to accurately reflect the evolution of the Services and components and elements of the Services as described therein. In the event of any conflict between this Agreement and a Schedule, the provisions of this Agreement shall control.

2. In connection with the Services, Hospitals will provide patient data to Meridian. Hospitals will obtain such consents as may be required to enable Meridian to access and use the patient data.

3. Meridian shall have sole responsibility for the specific time and manner in which the Services are performed pursuant to this Agreement, and the resources that are used to perform Services. Meridian and Hospitals agree that they are independent contractors and that neither has the authority to bind or make any commitment on behalf of the other.

### C. HIPPA OBLIGATIONS

Meridian and PAM agree to comply with the applicable requirements of the Health Insurance Portability & Accountability Act of 1996 ("**HIPAA**") and regulations at 45 C.F.R. Parts 160, 162 and 164; and the Health Information Technology for Economic and Clinical Health Act, enacted as part of the American Recovery and Reinvestment Act of 2009, and its attendant regulations and guidance (the "**HITECH Act**"). In that regard, Meridian and PAM

further agree to comply with the provisions of the Business Associate Addendum, attached to the Agreement, which shall constitute an integral part of this Agreement and is hereby incorporated into this Agreement. In the event of conflict between the Business Associate Addendum and any provision of this Agreement, the terms of the Business Associate Addendum shall control.

### D. FEES AND PAYMENTS

1. PAM shall pay Meridian a Delivery and Installation charge of:

## REDACTED

2. PAM shall pay Meridian a Subscription and Support Services Fee of:

## REDACTED

3. For additional services performed by Meridian upon agreement by both parties, PAM shall pay to Meridian the fees set forth in the applicable Schedule(s).

4. The Monthly Fee shall be due on the first day of each month during the Term of this Agreement ("Due Date"). Any additional fees will be invoiced to PAM on a monthly basis and will be due within thirty (30) days of invoice. If PAM fails to make payments when due, such failure shall be considered a breach and, in addition to Meridian's other rights and remedies under law or equity, Meridian may, upon ten (10) days prior written notice and an opportunity to cure within ten (10) days of receiving said notice, suspend PAM's or a PAM Affiliated Campus' access to the Pinpoint®, MedNarrative, and Q1 Health Software or terminate this Agreement in accordance with Section E.

5. A Late Payment Charge of 5% shall apply to any invoice that is not paid within ten (10) days of Due Date. Thereafter, interest on any late payments shall accrue at one percent per month or the highest rate permitted by applicable law, whichever is less, from the date such amount is due until fully paid.

6. PAM is solely responsible for payment of any sales or use taxes resulting from or related to this Agreement, exclusive of taxes based on Meridian's income.

### E. TERM AND TERMINATION

1. The Term of this Agreement shall begin on the Effective Date and shall continue for a period of one (1) year ("Initial Term"). Thereafter, this Agreement will automatically renew for additional periods of one (1) year ("Renewal Term(s)") unless either party gives the other party written notice of its intent to not renew this Agreement at least ninety (90)

    days before the end of a period. The Initial Term and Renewal Term shall be the Term of this Agreement.

2. This Agreement may be terminated if either party breaches any provision of this Agreement and has not cured such breach within thirty (30) days after receiving written notification of such breach by the non-breaching party, or if the other party is unable to pay debts when due, or the other party makes an assignment for the benefit of creditors, or the other party files any petition under the bankruptcy or insolvency laws of any jurisdiction, or the other party has a receiver or trustee to be appointed for its business or property, or the other party is adjudicated a bankrupt or an insolvent.

3. Upon termination of this Agreement for any reason, all rights granted to Hospitals will terminate and revert to Meridian. Hospitals shall remain obligated to pay all fees incurred prior to the expiration or early termination of this Agreement including any fees set forth on the Schedule attached to this Agreement.

## F. PROPRIETARY PROTECTION AND RESTRICTIONS

1. Meridian shall have sole and exclusive ownership of all right, title and interest in and to the Pinpoint®, MedNarrative, and Q1 Health Software, and all releases, modifications, enhancements, customizations and derivative works thereof (including ownership of all trade secrets and copyrights pertaining thereto).

2. Hospitals shall own the patient data. Hospitals hereby grants to Meridian a license to use, copy, display, perform, modify and prepare derivative works based on the patient data. Hospitals represents and warrants to Meridian that it has and shall continuously have all necessary right, title, license and authority to grant the licenses set forth in this <u>Section G</u>.

## G. FEEDBACK.
PAM agrees to use reasonable efforts to provide Meridian with comprehensive information and feedback regarding the Pinpoint®, MedNarrative, and Q1 Health Software, including, but not limited to, all information regarding any issues with the Pinpoint®, MedNarrative, and Q1 Health Software or any changes or suggested changes to the Pinpoint®, MedNarrative, and Q1 Health Software, and any such feedback or other information provided to Meridian relating to the Pinpoint®, MedNarrative, and Q1 Health Software shall be received and treated by Meridian on a non-confidential and unrestricted basis ("Feedback"). Such issues will be addressed at Meridian's discretion and per Meridian's standard development practices. PAM agrees to use reasonable efforts to provide Feedback as soon as possible after a Hospital learns of such Feedback. Meridian shall have a worldwide, royalty-free, non-exclusive, perpetual, and irrevocable right to use Feedback for any purpose, including but not limited to, incorporation of such Feedback into the Software or other software products.

## H. CONFIDENTIALITY

1. All information disclosed by either Meridian, PAM or Hospitals as a "Disclosing Party" to the other party as a "Receiving Party" or otherwise learned by the Receiving Party in connection with performance of the Services that is specifically identified in writing as confidential, (collectively, "Confidential Information") shall be treated by Receiving Party as confidential information of the Disclosing Party. PAM and Hospitals acknowledge that the

Pinpoint®, MedNarrative, and Q1 Health Software and the terms of this Agreement are Confidential Information of Meridian.

2. Receiving Party acknowledges that all Confidential Information remains the property of Disclosing Party. The Receiving Party agrees not to use or disclose any Confidential Information for any purpose except to perform its obligations under this Agreement. The Receiving Party will establish controls to ensure the protection of the Disclosing Party's Confidential Information. Disclosure to a Hospital's authorized Users of the Pinpoint®, MedNarrative, and Q1 Health Software shall only be made when and to the extent such disclosure is necessary for such users to make use of the Pinpoint®, MedNarrative, and Q1 Health Software in accordance with this Agreement, and then only to Users who are under confidentiality obligations consistent with this Section H..

**I. WARRANTY AND DISCLAIMER.** The Services will be performed in a good and workmanlike manner in accordance with the applicable Schedule. Meridian warrants that it will use commercially reasonable virus detection computer software programs to test the Pinpoint Software for viruses prior to delivery of the Services to Hospitals and that Meridian will continue to take such steps with respect to any Services delivered to Hospitals to correct any identified error ("Anti-Virus Software Warranty"). If Meridian violates the Anti-Virus Software Warranty, Meridian shall (1) remove such virus from the Service and Pinpoint Software at no cost to PAM or Hospitals, and Hospitals shall reasonably cooperate with such efforts, and (2) reinstall, at no cost, a backup copy of any of Hospitals' data associated with the Pinpoint Software which was lost, if any. OTHER THAN THE FOREGOING SENTENCE, THE SERVICES ARE PROVIDED "AS IS" WITHOUT WARRANTY OF ANY KIND, AND MERIDIAN EXPRESSLY DISCLAIMS ANY AND ALL OTHER PROMISES, REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE SERVICES OR THE PINPOINT®, MEDNARRATIVE, AND Q1 HEALTH SOFTWARE, WHETHER EXPRESS OR IMPLIED, INCLUDING NONINFRINGEMENT, MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE.

**J. LIMITATION OF LIABILITY.** IN NO EVENT SHALL MERIDIAN'S TOTAL, CUMULATIVE, AGGREGATE LIABILITY, WHETHER BASED IN CONTRACT, NEGLIGENCE, TORT, STRICT LIABILITY OR OTHERWISE, EXCEED THE TOTAL AMOUNT OF FEES ACTUALLY PAID BY HOSPITALS TO MERIDIAN FOR THE PARTICULAR SERVICE IN THE THREE (3) MONTHS PRECEDING THE EVENT GIVING RISE TO THE CLAIM. MERIDIAN SHALL HAVE NO LIABILITY FOR LOSS OF DATA. IN NO EVENT SHALL MERIDIAN BE LIABLE FOR ANY LOST PROFITS, DATA, OR BUSINESS, OR ANY INCIDENTAL, SPECIAL, EXEMPLARY, OR CONSEQUENTIAL DAMAGES, EVEN IF MERIDIAN HAD BEEN ADVISED OF THE POSSIBILITY OF SUCH CLAIMS OR DEMANDS. THIS LIMITATION UPON DAMAGES AND CLAIMS IS INTENDED TO APPLY WITHOUT REGARD TO WHETHER OTHER PROVISIONS OF THIS AGREEMENT HAVE BEEN BREACHED OR HAVE PROVEN INEFFECTIVE.

**K. INDEMNIFICATION**

1. Except for claims which PAM or Hospitals have indemnified Meridian under Section L.2, Meridian hereby agrees to indemnify, defend and hold harmless each PAM Affiliated Campus and its directors, officers, employees and agents from and against any liabilities,

damages, losses, expenses, claims, demands, suits, fines or judgments, including reasonable attorneys' fees and costs and expenses incidental thereto ("Losses") arising out of or in connection with a third party claim of direct infringement of any duly issued United States patent or infringement of any copyright resulting solely from an PAM Affiliated Campus' use of the Pinpoint®, MedNarrative, and Q1 Health Software. If such a claim is made or appears possible, PAM and Hospitals agree to permit Meridian to obtain the right for Hospitals to continue to use the Pinpoint®, MedNarrative, and Q1 Health Software, or to modify or replace the Pinpoint®, MedNarrative, and Q1 Health Software to make it non-infringing. If Meridian determines that neither of these alternatives is reasonably available, Meridian may immediately terminate this Agreement and Hospitals will immediately discontinue all use of the Pinpoint®, MedNarrative, and Q1 Health Software. Hospitals shall promptly notify Meridian of any such third party claim and will provide all cooperation requested by Meridian. Meridian shall have no obligation for any claim based on a combination, operation or use of the Pinpoint®, MedNarrative, and Q1 Health Software with any product, data, or apparatus not provided or authorized in writing by Meridian, or if a Hospital is then in breach of this Agreement. THIS SECTION STATES MERIDIAN'S ENTIRE OBLIGATION TO HOSPITALS WITH RESPECT TO ANY CLAIM OF INFRINGEMENT.

2. Other than for claims that Meridian has indemnified PAM for under Section L.1, PAM and Hospitals hereby agree to indemnify, defend and hold harmless Meridian and its directors, Meridian, officers, employees, agents, and independent contractors from and against any Losses arising out of or in connection with: (i) an PAM Affiliated Campus' use of the Pinpoint®, MedNarrative, and Q1 Health Software; (ii) PAM's breach of this Agreement; (iii) Meridian disabling access to the Pinpoint®, MedNarrative, and Q1 Health Software for specific users at PAM's request; (iv) the violation of any third party rights by PAM and/or an PAM Affiliated Campus; (v) the results of the Services; or (vi) the results of the Pinpoint®, MedNarrative, and Q1 Health Software.

## L. MISCELLANEOUS

1. No modification of this Agreement shall be binding unless it is in writing and is signed by an authorized representative of both parties.

2. In the event that any of the terms of this Agreement is or becomes or is declared to be invalid or void by any court or tribunal of competent jurisdiction, such term or terms shall be null and void and shall be deemed severed from this Agreement and all the remaining terms of this Agreement shall remain in full force and effect.

3. No waiver by party, express or implied, or any breach of any term, condition, or obligation of this Agreement by either party shall be construed as a waiver of any subsequent breach of any term, condition, or obligation of this Agreement, whether of the same or different nature.

4. This Agreement contains the entire agreement between the parties relating to the subject matter hereof, supersedes any prior understandings or agreements (whether oral or written) between the parties regarding the subject matter. EACH HOSPITAL ACKNOWLEDGES THAT IT HAS NOT RELIED UPON ANY REPRESENTATIONS OR PROMISES (WHETHER ORAL OR WRITTEN) OF ANY KIND, INCLUDING WITHOUT

LIMITATION, ANY WITH RESPECT TO THE RESULTS OR OUTPUTS OF THE PINPOINT®, MEDNARRATIVE, AND Q1 HEALTH SOFTWARE, OTHER THAN THOSE CONTAINED IN THIS AGREEMENT.

5. This Agreement shall be governed by and construed in accordance with the laws of Texas, without reference to its conflict of laws provisions.

6. Neither party shall be liable for any default or delay in the performance of its obligations hereunder if and to the extent and while such default or delay is caused, directly or indirectly, by fire, flood, earthquake, explosions, catastrophic weather conditions or other elements of nature or acts of God, acts of war, terrorism, riots, civil disorders, rebellions or revolutions in the United States, strikes, lockouts, or labor difficulties or any other similar cause beyond the reasonable control of such party.

7. Meridian agrees that, until the expiration of four (4) years (or such longer period of time required by applicable laws and regulations) after the furnishing of any Services pursuant to this Agreement, it will make available, upon written request, to PAM, the Secretary of Health and Human Services, the Comptroller General of the United States, any authorized Federal or State agency or entity, or any of their duly authorized representatives, copies of this Agreement and any books, documents, records and other data of Meridian that are necessary to certify the nature and extent of any discount to the software or Services provided hereunder.

8. The parties represent and warrant they are not listed by a federal agency as excluded, debarred, suspended or otherwise ineligible to participate in federal programs, including Medicare and Medicaid, and are not listed, nor have any current reason to believe that during the term of this Agreement will be so listed, on the HHS-OIG Cumulative Sanctions Report or the General Services Administration List of Parties Excluded from Federal Procurement and Non-Procurement Programs. The Parties agree that either may terminate this Agreement, upon notice to the other, in the event that either party is listed on the HHG-OIG Cumulative Sanctions Report or on the General Services Administration List of Parties Excluded from Federal Procurement and Non-Procurement Programs.
8. Sections E, F, G, H, I, J, K, and L shall survive any expiration or termination of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

| Signatures | |
|---|---|
| By:<br>Signature: _____<br>Name: Kristen Smith<br>Title: Executive Vice President of Development and Hospital Analytics | Meridian Hospital Systems Corporation<br>By:<br>Signature: Christopher LeBlanc (DocuSigned, 5F9171A5E5694F5...)<br>Name: CHRISTOPHER LEBLANC<br>Title: CEO |

## SCHEDULE 1

A.  Software to be provided:

   Pinpoint®
   MedNarrative
   Q1 Health

B.  Support Services to be provided:

   Database Management
   Maintenance
   Education/Training

**SCHEDULE 2**

PAM Affiliated Campus:

1. Warm Springs Rehabilitation Hospital of San Antonio
2. Warm Springs Rehabilitation Hospital of Westover Hills
3. Warm Springs Rehabilitation Hospital of Thousand Oaks
4. Pam Rehabilitation Hospital of Allen
5. PAM Rehabilitation Hospital of Corpus Christi
6. PAM Rehabilitation Hospital of Dover
7. Warm Springs Rehabilitation Hospital of Kyle
8. PAM Rehabilitation Hospital of Centennial Hills
9. PAM Specialty Hospital of Luling
10. Rehabilitation Hospital of Overland Park
11. PAM Rehabilitation Hospital of Round Rock
12. PAM Rehabilitation Hospital of Tulsa
13. PAM Rehabilitation Hospital of Victoria
14. PAM Rehabilitation Hospital of Clear Lake
15. PAM Specialty Hospital of Hammond
16. PAM Specialty Hospital of San Antonio
17. PAM Specialty Hospital of New Braunfels
18. PAM Specialty Hospital of Victoria North
19. PAM Specialty Hospital of Wilkes-Barre
20. PAM Specialty Hospital of Covington
21. PAM Specialty Hospital of Tulsa
22. PAM Specialty Hospital of Victoria South
23. PAM Specialty Hospital of Milwaukee
24. PAM Specialty Hospital of Texarkana
25. PAM Specialty Hospital of Corpus Christi North
26. PAM Specialty Hospital of Corpus Christi Bayfront
27. PAM Rehabilitation Hospital of Beaumont
28. PAM Specialty Hospital of Lufkin

DocuSign Envelope ID: E4D5D8BF-1456-4ED2-A929-0480E30128BD
Case 1:19-cv-01137-JE3 Document 10-5 Filed 07/08/19 Page 14 of 20

EXHIBIT
E2

**AUTHORIZED USER AGREEMENT TO TERMS OF ACCESS TO DATA THROUGH THE EXECUTIVE DECISION SUPPORT SYSTEM PURSUANT TO A LIMITED LICENSE GRANTED TO**

**Hospital Name:** _____Post Acute Medical_____

MERIDIAN HOSPITAL SYSTEMS CORPORATION ("MERIDIAN") facilitates the electronic availability of protected health information and operational efficiency information ("Data") through the Executive Decision Support System (the "Network") to __Post Acute Medical_____ ("Hospital") and individuals working on behalf of Hospital. Hospital has entered into a Services and Business Associate Agreement with MERIDIAN pursuant to which MERIDIAN agreed to provide Hospital and select Hospital personnel ("Authorized User(s)") a limited license to access the Network.

You have been identified by Hospital as an Authorized User of Data. MERIDIAN will provide you access to Data through the Network, subject to your compliance to the terms and conditions of this Authorized User Agreement (this "Agreement").

1. <u>Compliance with Agreement</u>

THIS IS A BINDING AGREEMENT. By your signature below, you agree to comply with all terms and conditions for access to Data under this Agreement, the Hospital's agreement(s) with MERIDIAN and all Network policies and procedures. Failure to comply with these terms and conditions may be grounds for discipline, including without limitation, denial of your privileges to access Data through Network and termination of your employment or agency by Hospital.

2. <u>Permitted Use and Restrictions on Use</u>.

2.1 Hospital provides Treatment, as defined by the HIPAA Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. Part 160 and Part 164, Subpart E. As Hospital's Authorized User of the Network, you may access the Network only to obtain Data to provide Treatment for Hospital's Patients. You may not use the Network, or any hardware or software relating to use of the Network, for purposes that are outside the scope of your duties with Hospital to provide Treatment to Patients.

2.2 This Agreement grants you a nonexclusive, nontransferable right to use the Network, subject to the following restrictions:

    a. This right is specific to you. You may not share, sell or sublicense this right with anyone else.

    b. You may not change, reverse engineer, disassemble or otherwise try to learn the source code, structure or ideas underlying the Network software or introduce a virus to the Network. You may not connect or install unauthorized or uncertified equipment, hardware or software or improperly use the hardware or software relating to use of the Network.

3. <u>Protection of Data</u>.

3.1 <u>Scope of Access</u>. As an Authorized User, you may have access to Data that includes protected health information that is subject to confidentiality, privacy and security requirements under state and federal law and regulations. You agree that you will only access Data consistent with your access privileges, and pursuant to all requirements under this Agreement, the Hospital's agreement(s) with MERIDIAN, Network policies and procedures, and applicable state and federal laws and regulations.

3.2 <u>Protection of Data</u>. As an Authorized User, you have an obligation to maintain the confidentiality, privacy and security of the Data.

    a. You will not disclose Data except as required in order for you to provide Treatment to a Patient and subject to all terms of this Agreement.

    b. You will not access or view any information other than what is required for you to provide Treatment to a Patient.

    c. You will not make any unauthorized copies of Data. You will not save Confidential Information to portable media devices (Floppies, ZIP disks, CDs, PDA or any other devices).

    d. You will not email any Data to another email account, unless the email message is encrypted or contained within the Hospital's firewall.

    e. You will not release your authentication code or device or password to any other person, including any employee or person acting on your, or the Hospital's, behalf. You will not allow anyone else to access the Network under your authentication code or device or password. You agree not to use or release anyone else's authentication code or device or password. You agree to notify MERIDIAN and Hospital immediately if you become aware or suspect that another person has access to your authentication code or device or password.

    f. You agree not to allow your family, friends or other persons to see the Data on your computer screen while you are accessing the Network. You agree to log out of the Network before leaving your workstation to prevent others from accessing the Network.

    g. You agree never to access Data for "curiosity viewing." This includes viewing Data of your children, other family members, friends, or coworkers, unless such access is necessary to provide Treatment to a Patient.

    h. You will protect the accuracy of the Data submitted or received through Network and will not incorporate information that you know is not accurate.

4. <u>Audit and Review</u>. MERIDIAN and Hospital have the right at all times and without notice to access the Network and any hardware or software relating to the Network to review and

audit your use of the Network and compliance with the terms of this Agreement. This includes any hardware or software located at your office, your home, or any other site from which you access the Network.

5. <u>Sanctions/Termination</u>. You understand that failure to comply with the terms of this Agreement may result in disciplinary action against you which may include, but shall not be limited to, loss of access to the Network as an Authorized User or termination of your employment or contract with Hospital.

6. <u>Indemnification</u>. To the extent permitted by Texas law, you agree to defend, indemnify and hold harmless MERIDIAN and Hospital (the "Indemnified Party") for such portion of any claims or causes of actions brought against the Indemnified Party, and/or the Indemnified Party's directors, officers, employees, or agents, by third parties as a result of your negligence, breach of contract or intentional tortious conduct arising under or in any way related to your performance of this Agreement or use of the Network.

7. <u>Duration</u>. This Agreement will be in effect from the time it is signed until MERIDIAN or Hospital terminates your status as an Authorized User or until you violate the terms of this Agreement. Any terms of this Agreement necessary to protect the Exchange and Data will survive the termination of this Agreement.

8. <u>Miscellaneous</u>.

8.1 The failure by any Party to enforce, at any time, any of the provisions of this Agreement or to require at any time performance by another Party of any of the provisions hereof shall in no way be construed to be a waiver of such provisions, to affect either the validity of this Agreement, or any part hereof, or the right of any party thereafter to enforce each and every provision in accordance with the terms of this Agreement.

8.2. MERIDIAN reserves the right to alter, modify, or amend the terms of this Agreement as reasonably necessary, as determined by MERIDIAN, in order to ensure the secure Exchange of Data and otherwise comply and be consistent with Hospital's agreement(s) with MERIDIAN, Network policies and procedures, and applicable state and federal laws and regulations. MERIDIAN will give advance notice of any amendment to the terms and conditions of this Agreement, unless immediate amendment is required in order to comply with HIPAA privacy regulations, the HITECH Act, and/or any applicable federal, state or local law.

8.3 Any notice to be given hereunder shall be given in writing and delivered to the Authorized User, Hospital or MERIDIAN, as appropriate, at the addresses listed below. All notices provided for hereunder shall be made in writing, and shall be deemed to have been duly given (i) on the date of service if served personally on the party to whom notice is to be given, (ii) on the date of service if delivery is made by overnight courier on the party to whom notice is to be given at the address set forth above, or (iii) five (5) days after the date of depositing the same in the U.S. mail and mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid, and properly addressed to the address set forth below.

8.4 This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to its conflict of laws provisions.

**AUTHORIZED USER:**

By: *Tim C* (DocuSigned by: 8DD4E54C461C4BA...)
Name: Tim Chilcote
Date of Execution: 8/9/2018 8:20:46 AM PDT

**HOSPITAL:**

By: *Sajeev Thomas* (DocuSigned by: 5967B2164FF3473...)
Name: Sajeev Thomas
Title: Director, Applications and BI
Date of Execution: 8/9/2018 8:12:17 AM PDT

**MERIDIAN:**

MERIDIAN HOSPITAL SYSTEMS CORPORATION

By: *Christopher LeBlanc* (DocuSigned by: 5F9171A5E5694F5...)
Name: Chris LeBlanc
Title: President and CEO
Date of Execution: 8/9/2018 8:31:10 AM PDT



EXHIBIT E3

Begin forwarded message:

**From:** Kristen Smith <ksmith@postacutecorporate.com>
**Date:** March 7, 2019 at 2:45:24 PM CST
**To:** Christopher LeBlanc <chris.leblanc@meridianintel.com>
**Cc:** Anthony Misitano <amisitano@postacutecorporate.com>, John Bauer <jbauer@postacutecorporate.com>
**Subject: Fw: Preliminary Summary - Confidential**

Chris-

Legal has completed a preliminary investigation, see below conclusion and recommendations. In addition, attached are the documents, as promised, with the involved vendor.

As we concluded on the call, we will await your response after receipt and review of this information.

Thanks,

Kristen

Conclusion and Recommendation

I have completed a preliminary investigation of what occurred with respect to the sharing of login information by Sajeev Thomas, a PAM employee. While Mr. Thomas' sharing of his login credentials was wholly unauthorized, and in clear violation of PAM policy, there is no evidence to suggest that any PAM data or other confidential and proprietary information of Meridian was compromised.

That said, I would recommend that we seek, on our behalf and on behalf of Meridian, a written acknowledgment from both Key Management Group (KMG) and its employee who was given Mr. Thomas' credentials. Essentially, the KMG employee in question had the same access to our data in Meridian as any PAM employee would have. KMG (and its employees and representatives) are bound to confidentiality provisions under the terms of a Non-Disclosure Agreement dated May 2018 (attached).

My understanding is that Meridian is concerned that unauthorized and unknown users may have had access to both PAM and Meridian information. While KMG did have access to PAM data (and by virtue of the process in which it is delivered, some Meridian data), there is nothing to suggest any bad intent or theft by anyone. Apparently representatives of Meridian had expressed concern about "trust" and the relationship with PAM; I have seen nothing to suggest that anyone at PAM, other than Mr. Thomas, was aware of his decision to share his login credentials. Moreover, Mr. Thomas did not exhibit an intend to deceive, though I do believe that he at times does not use words and phrases in proper context. I did not get the initial impression that it was intentional.

There is nothing to suggest that anyone at PAM asked or even knew that Mr. Thomas had taken these actions. PAM's relationship with KMG was to utilize KMG to develop its own process for delivering certain information, certainly not to "copy" or "replicate" anything owned by Meridian. In the end,

however, PAM elected to move forward with a joint venture with Meridian. This would obviate the need for KMG to do anything, now or in the future. Of course, the restrictions imposed upon the entity would remain.

Background

In May 2018, PAM executed an NDA with KMG, along with a consent to review data outside of the United States. The purpose of the NDA was to enable the parties to discuss the possibility of KMG creating certain discharge planning reports and information for PAM. Throughout 2018, discussions were had with KMG regarding the process. At the same time, discussions were ongoing with Meridian to extend or strengthen the relationship. However, with the termination date in the Meridian Agreement approaching, PAM revisited its need for an alternate system in the event that its relationship with Meridian ceased.

At some point, PAM made a decision to move forward and terminate the Meridian relationship, and to engage KMG to assist with creating a new model to utilize relative to discharge planning. According to Mr. Thomas, in early 2019, he provided his login information to an employee of KMG. Mr. Thomas acknowledges that he did not share that fact with anyone, nor did he seek the permission of anyone at PAM to do so. Mr. Thomas states that his sole purpose for providing access to KMG's employee was to enable KMG to evaluate the PAM patient data and reports that PAM receives related to that data. As explained by Mr. Thomas, he wanted KMG to know the data we need and use on a daily basis (while we do not know for sure his intentions, the fact that KMG had reviewed information for multiple hospitals does confirm that suggestion). At no point did Mr. Thomas authorize anyone from KMG to copy or replicate any property of Meridian. In fact, KMG had access only to the same information that Mr. Thomas (and other PAM users) would have. Mr. Thomas maintains that he changed his password approximately one week ago.

According to Mr. Thomas, Chris LeBlanc from Meridian contacted him on March 6, 2019 to ask about this issue. Mr. Thomas states that he did not tell Mr. LeBlanc that he gave access to KMG in order for them to review Meridian's software or program or intellectual property. Instead, the purpose was to insure that KMG was aware of what data, in what form, we wanted our information.

Risk

At this point, I do not believe there is any substantial risk that our data or Meridian's property has or will be compromised. While Mr. Thomas was clearly acting without authority and wholly outside our policies and procedures, the entity (and individual) who viewed the information are absolutely bound by the terms of the NDA (which includes protections related to any PHI). In evaluating KMG, it definitely appears that they are both a legitimate, and well-known entity that does employ individuals (including the individual who had access) in India. There is no evidence to suggest that KMG is operating in a manner that involves an intent to "steal" or improperly use any information or data of PAM or Meridian.

My recommendation is that we have KMG, and its employee, sign an acknowledgement that confirms: (1) they reviewed the data only under the terms of the NDA; (2) nothing was used or disclosed; (3) Mr. Thomas' login credentials were not shared with anyone else inside or outside of KMG; and (4) any information in the possession of KMG or its employee, and owned by PAM or Meridian, has been returned or destroyed. Please note that this is subject to further review, and we may wish to obtain some additional representations from KMG and its employee.

Robert J. Tribeck, Esquire
Chief Legal Officer
Post Acute Medical, LLC

1828 Good Hope Road, Suite 102 l Enola, PA 17025
Office: 717.731.9660 l Direct: 717.317.9304
rtribeck@postacutecorporate.com<mailto:rtribeck@postacutecorporate.com>
www.postacutemedical.com<http://www.postacutemedical.com/>
[PostAcuteMedical_LOGO_2747]


Kristen Smith MHA, PT
President of Clinical Innovation and Business Intelligence
Post Acute Medical, LLC
614-204-7108
ksmith@postacutecorporate.com