6/26/2019 11:46 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 34685226
By: SHANNON NORTH-GONZALEZ
Filed: 6/26/2019 11:46 AM

## CAUSE NO. 2019-23790

| | | |
|---|---|---|
| **MERIDIAN HOSPITAL** | § | **IN THE DISTRICT COURT** |
| **SYSTEMS CORPORATION** | § | |
| | § | |
| **Plaintiff,** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **VS.** | § | |
| | § | |
| **POST ACUTE MEDICAL, LLC,** | § | **11th JUDICIAL DISTRICT** |
| **PAM PHYSICIAN ENTERPRISE,** | § | |
| **CLEAR LAKE INSTITUTE FOR** | § | |
| **REHABILITATION, LLC** | § | |
| **KEY MANAGEMENT GROUP, INC.** | § | |
| | § | |
| **Defendants.** | § | **JURY TRIAL DEMANDED** |

### PLAINTIFF'S AMENDED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

This is a Texas Uniform Trade Secrets Act (TUTSA) case. Plaintiff, Meridian Hospital Systems Corporation, files this Amended Petition and Application for Temporary Restraining Order and Temporary Injunction against Defendants: Post Acute Medical, LLC ("PAM"), PAM Physician Enterprise, Clear Lake Institute for Rehabilitation, LLC, KMG Infotech "(Infotech"), and Key Management Group, Inc. ("KMG") (collectively "Defendants") and alleges as follows:

### I.      BACKGROUND

A Temporary Restraining Order was entered by the Honorable Daryl Moore on April 3, 2019, was extended and has now expired by its terms.[1]  Expedited discovery was ordered by the Honorable Kristen Hawkins on May 2, 2019. After discovery, it was determined that

---

[1] The TRO required that the Defendants were restrained from using, utilizing and generating reports for any and all Meridian software (**in any form)** for any all purposes, including to study, copy duplicate, or replicate in order to prevent further sharing of the protected trade secrets and confidential information – including for any purpose other than patient related reports generating in the ordinary course of business under the SBAA between Meridian and PAM. KMG and PAM are in violation of the original terms.

1

the misappropriation was more severe and ongoing and Meridian prohibited PAM from all access to the software applications thereby nullifying the express terms of the TRO. This TRO seeks separate protection. Namely, to immediately halt and stop KMG and PAM's disclosure and dissemination of Meridian's trade secrets **on the internet** thereby causing imminent and irreparable harm.  Such conduct is prohibited by contract, state and federal law.

## II.  <u>PARTIES</u>

Plaintiff Meridian Hospital Systems Corporation ("Meridian") is a corporation organized and existing under the laws of the State of Texas, with its principal office in Dallas, Texas.

Defendant Post Acute Medical, LLC ("PAM") is a corporation organized and existing under the laws of the State of Delaware, which is doing business in the State of Texas under individually named hospitals and rehabilitative care centers in Harris, Bexar, Jefferson, and Dallas County. The resident address and principle place of business listed with the Texas Secretary of State for this Defendant is 1021 Main Street, Suite 1150, Houston, Texas 77002. The headquarters is 1828 Good Hope Road, Suite 102, Enola, Pennsylvania 17025.  Defendant has been served and answered in the lawsuit.

Defendant PAM Physician Enterprise ("PAM PE") is a domestic corporation organized and existing under the laws of the State of Texas, doing business at 110 E Medical Center Blvd, Webster, Texas 77598.  Defendant has been served and answered in the lawsuit.

Defendant Clear Lake Institute for Rehabilitation, LLC ("PAM WEBSTER") is a corporation organized and existing under the laws of the State of Delaware, which is doing business in Harris County as Post Acute Medical at its headquarters located at 110 E Medical Center Blvd, Webster, Texas 77598.  Defendant has been served and answered in the lawsuit.

Defendant Key Management Group, Inc. ("KMG") is a corporation organized and existing under the laws of the State of New York, 125 Baylis Road, Suite 260, Melville, NY, 11747, with offices in Oman, UAE, and India. KMG filed a Special Appearance which was heard Monday, June 24, 2019.

Defendant KMG Infotech ("Infotech") is a corporation organized and existing under the laws of the State of New York, 125 Baylis Road, Suite 260, Melville, NY, 11747, with offices in Oman, UAE, and India.

KMG and Infotech are referred herein as the ("KMG Defendants")

### III.    JURISDICTION AND VENUE

This Court has personal jurisdiction and subject matter jurisdiction over the parties. TEX. CIV. PRAC & REM CODE §17.042. Venue for this suit is proper.

### IV.    RELIEF

Plaintiff seeks monetary relief over $40,000,000, and is within the jurisdictional amounts of this Court. TEX. R. CIV. P. 47(C)(5).

### V.    DISCOVERY-CONTROL PLAN

Plaintiff intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.4 and affirmatively pleads that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169, because Plaintiff requests injunctive relief and Plaintiff seeks monetary relief over $100,000.

### VI.    EVIDENCE

This filing is supported by the following, which is attached and incorporated herein:

A.    Affidavit of Christopher LeBlanc, including Exhibit 1-6, incorporated.

B.    Affidavit of Elizabeth Markert.

3

C.     Affidavit of James Asberry.

D.     Rajesh Sahu Medical Discharge Calender

E.     Rajesh Sahu Biographical information – KMG

F.     Non Disclosure Agreement

G.     KMG STATEMENT OF WORK TO MIMIC MERIDIAN

H.     KMG PROPOSAL WITH MERIDIAN DISCHARGE CALENDER

I.     KMG PORTAL DESIGN (PAM 163)

J.     PASSWORD EXCHANGE

H.     MERIDIAN DISABLED ACCESS

## VII.     <u>FACTS</u>

### A.     BACKGROUND

In 2010, Plaintiff Meridian launched a revolutionary web-based, user-friendly healthcare reporting system capable of interfacing with <u>any</u> healthcare provider's current financial operating system. Using client data, as well as real-time financial and clinical reports, Plaintiff -- a consulting, development and management company -- created various software programs to help improve cost management and operational performance for healthcare related facilities. Exhibits A and B. In that regard, Plaintiff successively developed medical software and obtained a registered trademark for Pinpoint®, as well as developed MedNarrative and Q1 Health, Pinpoint LTAC, Pinpoint Rehab, Pinpoint Outpatient, eVAL™, and MedNarrative Software Application to improve hospital management for numerous hospitals.

## C. MERIDIAN AND PAM CONTRACTUAL AGREEMENTS

In 2013, Meridian signed an agreement with Defendant Post Acute Medical, LLC ("PAM") for installation in PAM Defendants rehabilitation hospitals. Meridian provided its proprietary software programs to twenty-eight (28) PAM rehabilitation hospitals and specialty hospitals scattered throughout Texas, including Harris County's Defendant Clear Lake Institute for Rehabilitation, LLC.  Defendant PAM Physician Enterprise also benefits from use of Plaintiff's software applications at the Clear Lake location.

PAM and Meridian worked together for over six years while Meridian provided development, support, ongoing modification, training, server costs, data storage and numerous benefits to this client, and other non-related hospitals. As the relationship grew, PAM expressed repeated interest in buying an ownership interest in Meridian in 2018.  During the exploration of the buy-in, it was determined that PAM had disclosed Meridian's confidential information. Immediately, PAM stated that it was an unauthorized rogue employee and that an investigation had been thoroughly launched and it would not happen again. Communications relating to a buy-out agreement or extensions of the contract ceased as the brevity of the theft unraveled.  The controlling agreement terminated on June 12, 2019.

Meridian and PAM entered into a Services and Business Associate Agreement ("SBAA") on behalf of the parent and its underlying hospitals.  Nineteen of the 28 covered hospitals are in Texas.[2]   The agreement included an express provision that Meridian retained sole and exclusive ownership of its software applications, and that the software applications

---

[2] See Exhibit A(1), SBAA showing Texas locations: San Antonio, Westover Hills, Thousand Oaks, Allen, Kyle, Corpus Christi, Luling, Round Rock, Victoria, Clear Lake, San Antonio, New Braunfels, Victoria North, Victoria South, Texarkana, Corpus Christi North, Corpus Christi Bayfront, Beaumont, Lufkin.

would remain confidential.  Meridian also required a separate user agreement to further

protect its trade secrets, and each hospital and user were required to agree not to study,

document, or reverse engineer the software applications.

Since inception of its products, Meridian has taken, and continues to take, extensive

efforts to keep its trade secrets protected from the public purview and all clients must agree to

keep the information confidential. Indeed, here PAM expressly agreed in the terms of their

contract that the ownership of all right, title and interest, including modifications and

enhancements, were the property of Plaintiff Meridian. *See* Paragraph F of Exhibit A (1),

Services and Business Associate Agreement ("SBAA") (emphasis added), wherein the parties

agreed that Meridian had sole and exclusive ownership:

### F.    PROPRIETARY PROTECTION AND RESTRICTIONS

1. Meridian shall have **sole and exclusive ownership** of all right, title and interest in and
to the Pinpoint®, MedNarrative, and Q I Health Software, and all releases, modifications,
enhancements, customizations and derivative works thereof (including ownership of all
trade secrets and copyrights pertaining thereto).

2. Hospitals shall own the patient data. Hospitals hereby grants to Meridian a license to
use, copy, display, perform, modify and prepare derivative works based on the patient
data. Hospitals represents and warrants to Meridian that it has and shall continuously
have all necessary right, title, license and authority to grant the licenses set forth in this
Section G.

Moreover, the confidential nature of the contract executed by the parties was clear --

the software and protected information were to be kept confidential.  Paragraph H of Exhibit

A(1), provided in whole:

### H.    CONFIDENTIALITY

1. All information disclosed by either Meridian, PAM or Hospitals as a "Disclosing
Party" to the other party as a "Receiving Party" or otherwise learned by the Receiving
Party in collection with performance of the Services that is specifically identified in
writing as confidential, (collectively, "Confidential Information") shall be treated by
Receiving Party as confidential information of the Disclosing Party. PAM and Hospitals

acknowledge that the Pinpoint®, MedNarrative, and Ql Health Software and the terms of this Agreement are Confidential Information of Meridian.

Meridian took further steps to protect dissemination of its protected work.  The SBAA expressly restricted access to single users.  Meridian agreed to provide Meridian Login IDs and passwords for those employees of PAM Affiliated Campuses (in Texas) who would use Pinpoint®, MedNarrative and Q1 HealthSoftware.  **Each Login ID and Password was to be used only by a single user.**  *See* Exhibit A(2) Paragraph A.2.

Each Permitted Use provided for exclusive use and such use was conditioned on an agreement that expressly prohibited reverse engineering, disassembling the software, or learning the source code or ideas underlying the software.  *See* Exhibit A(2), Authorized User Agreement to Terms of Access to Data Through the Executive Decision Support System Pursuant to A Limited License, ("User Agreement"):

> 2.2    This Agreement grants you a nonexclusive, nontransferable right to use the Network, subject to the following restrictions:
>
>> a.      This right is specific to you. You may not share, sell or sublicense this right with anyone else.
>>
>> b.      You may not change, reverse engineer, disassemble or otherwise try to learn the source code, structure or ideas underlying the Network software or introduce a virus to the Network. You may not connect or install unauthorized or uncertified equipment, hardware or software or improperly use the hardware or software relating to use of the Network.

Further, the User Agreement provided that the provided password could not be shared, including by a person acting on the behalf of PAM.

> You will not release your authentication code or device or password to **any other person, including any employee or person acting on your, or the Hospital's, behalf.** You will not allow anyone else to access the Network under your authentication code or device or password. You agree not to use or release anyone else's authentication code or device or password. **You agree to notify MERIDIAN and Hospital immediately if you become aware or suspect that another person has access to your authentication code or device or password.**

7

See ¶ 2 of A(2). In no uncertain words, access and exposure was limited to the signatories to the User Agreement.  PAM did not request that Meridian provide user access to the KMG Defendants.  In fact, the KMG Defendants remained anonymous to Meridian until the theft was discovered. PAM continued to try to hide the KMG Defendants' involvement from Meridian. Even the executives insisted that Mr. Thomas' activities were rogue.  However, after discovery, the executives cannot hide their involvement and contracts for the KMG Defendants to mimic Meridian's software applications.

Continuing talks for buyouts and entry into ownership were sporadically discussed. During the course of these talks, Meridian received an email from PAM Chief Executive Officer, Anthony Misitano, wherein he stated that PAM was trying to build their own software: "Perhaps we go forward with our plan to build our own."  See Exhibit A.  Knowing that it had spent nearly a decade and millions of dollars building the software, Meridian knew that even if PAM or its related entities using the software actually intended to start development of their own software, such an effort would take years and millions of dollars.

**D.   KMG DEFENDANTS WERE GIVEN ACCESS TO MERIDIAN'S SOFTWARE APPLICATIONS**

Shortly thereafter, Meridian discovered that PAM employee Sajeev Thomas, the Director of Applications and Business Intelligence at PAM, gave his User ID and Password to an individual in India working for the KMG Defendants in **express violation** of the Parties' agreements.  See Exhibit A(3) and (6). Once this was learned, Meridian immediately shut down access and contacted PAM about the violation. See Exhibit B. The KMG Defendants are a healthcare software competitor of Plaintiff. PAM handed over the documentation and

access to KMG Defendants. PAM handed over the keys to the kingdom. And all of Meridian's work product with step by step how to rebuild.  See Exhibits G, H, and I.

Further investigation showed that Sajeev Thomas and the KMG Defendants were even simultaneously accessing various applications using the same credentials. Meridian discussed the unauthorized access with Thomas, wherein he stated that the relationship with the KMG defendants in India was <u>not</u> for patient care -- another violation of the contract. According to Thomas, PAM had a "project" with the KMG defendants to improperly reverse engineer and/or analyze, study, duplicate or re-create the healthcare applications. See Exhibit C. Mr. Thomas admitted to Meridian that he provided screen sharing with employees of the KMG defendants, including sharing his logins and credentials. See Exhibits J and K.  Mr. Thomas admitted to "documenting software."  A politically correct way of saying "steal" or "misappropriate" the software.  Expressly in violation of the agreement that limits for the use of the software for patient care **<u>only.</u>**  **PAM does not even dispute that Mr. Thomas provided the credentials in violation. See Exhibit A(3).** These actions are in <u>direct violation</u> of the contract, the confidentiality clauses and constitute theft and misappropriation of trade secrets.

Once faced with the unauthorized access, PAM presented to Meridian the KMG defendants' non-disclosure agreement and claimed its actions were not in violation of the related agreements. PAM further stated that, if there had been an isolated event where the disclosure was contrary to the agreements in place, such disclosure had been stopped **and limited to its competitor.  See Exhibit A(3).**  See Exhibit F.

But the violations of the agreement did not stop. Upon Mr. Thomas' termination from access to the software, another PAM information technology employee ramped up his page

views, and this particular employee recorded access increased tenfold.  For example, for the previous six months, page access was a mere 60 views. After Mr. Thomas' access was disabled, the new IT employee's page views (Mr. Thomas' sole employee in IT) were 7,000 views in a matter of weeks.  Access was immediately shut off from this IT employee, an employee not even in patient care.  See Exhibit A.

During these inquiries, PAM boldly revealed it had entered into a business arrangement with the KMG defendants – a New York based software development application, maintenance, and BPO operations company, providing quality IT solutions in healthcare. Not only did PAM violate the agreements, but PAM gave direct access to Meridian's trade secret to this Meridian competitor. It is now clear that, together, PAM and KMG are working to improperly reverse engineer the software and its applications—in direct violation of the agreements in place.  PAM and KMG both knew better. See Exhibits G, H, I and J.

On February 28, 2019, PAM gave notice of non-renewal and termination of the Services Agreement once Meridian first noticed the suspicious activity. Yet PAM had the audacity to request an extension until the end of 2019. Likely for the reason they could finalize (if they have not already) pilfering the software. As a result of the unauthorized disclosure, and theft (or attempted theft), PAM boldly requested a six-month extension of the agreement at the time of filing this suit.  This can only be presumed so that KMG defendants could continue documenting Meridian's software.

Meridian's development and creation of its software is protected by trade secret law and TUTSA, and Meridian has a right to enforce a trade secret and protect its proprietary information.  Meridian took extraordinary steps to keep it secret and required each user to

contract with Meridian.   It took time and money to develop the applications, and the information is generally unknown to and not readily ascertainable through proper means by third parties. The extensive dissemination cannot be clawed back.  Plaintiff has other clients, and the software applications provide value to third and unrelated parties and providing access to at least one known competitor irreparably **impairs the value of Meridian and its software.**  As such, Meridian must assert these causes of action, and seek an injunction to prohibit further disclosure and harm.

### E. KMG DEFENDANTS ARE MARKETING MERIDIAN'S DISCHARGE CALENDER

Audaciously, KMG defendants are <u>currently</u> marketing Meridian's calendar under the name of Post Acute Medical – which includes un-redacted patient data.  See Exhibits D and E. KMG and PAM work together under a non-disclosure agreement and together they must be prohibited from further dissemination of Meridian's trade secrets and patient care information.

### VIII.  CAUSES OF ACTION

### A.      TRADE-SECRET MISAPPROPRIATION BY ALL DEFENDANTS

Plaintiff repeats and re-alleges the allegations in each of the foregoing paragraphs.

Defendants collectively and knowingly misappropriated the trade secrets of Meridian under Texas Uniform Trade Secrets Act (TUTSA), a statutory framework for common-law theft of trade secrets, TEX.CIV.PRAC&REM.CODE §134A.

**1.      Meridian's software is a trade secret and extraordinary efforts were made to keep it secret.**

Meridian's software is undoubtedly a trade secret.  Meridian took extraordinary efforts to protect it from public disclosure.  The very definition of a trade secret is "secrecy" and when efforts are made to keep material important to particular business secret, there is a trade secret.

*Gonzales v. Zamora*, 791 S.W.2d 258 (1990).  Specifically, a "trade secret" is broadly defined as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Hyde Corp v. Huffines, 314 S.W.2d 763,776 (Tex.1958),* (quoting *RESTATEMENT OF TORTS § 757, cmt. b* (1939)). Software has expressly been protected by trade secrets law. *Wellogix, Inc. v. Accenture, LLP*, 716 F.3d 867, 876 (5th Cir.2013) (eerily similar to this case, the Fifth Circuit affirmed a $44.4 million award when software developer brought claims against consulting firm for misappropriation of trade secrets). Protection is available even in the absence of an express agreement not to disclose materials; when a confidential relationship exists, the law will imply an agreement not to disclose trade secrets. Protection here existed even <u>without</u> Meridian's Business Agreement or User Agreement and KMG knew or should have known of the trade secret.  Here, the parties agreed, as evidenced by the contracts, that each authorized signer must execute an agreement directly with Meridian prior to the issuance of login credentials. Without question, Meridian's software was subject to trade secret protection.

### 2.    Defendants misappropriated the protected trade secret

Misappropriation by the harvesting of software development is unquestionable. Even, PAM blatantly admits misappropriation for use in research and development with third party software developer and Meridian competitor – KMG.  PAM states it had an express intent to learn, study, and use Meridian's proprietary and confidential and Meridian's information was not "compromised."  Besides the fact that "no harm, no foul argument" is not a defense, PAM is just wrong as irreparable harm was done.  Plus, it is not up to PAM to make that determination of harm and who is permitted access to the information. PAM's Mr. Robert

Tribeck, after internally investigating with the President of Business Intelligence, Kristen Smith, tried to sweep the violation under the rug:

> I have completed a preliminary investigation of what occurred with respect to the sharing of login information by Sajeev Thomas, a PAM employee. While Mr. Thomas' sharing of his login credentials was wholly unauthorized, and in clear violation of PAM policy, here is no evidence to suggest that any PAM data or other confidential and proprietary information of Meridian was compromised.

***

> **PAM's relationship with the KMG defendants was to utilize KMG to develop its own process for delivering certain information,** certainly not to "copy" or "replicate" anything owned by Meridian.

See Exhibit A (6). And Kristen Smith knew that Mr. Thomas was pulled to work on a "software replacement" and the project was to build and replace Meridian privately back in 2018. See Exhibit C, ¶ 4. Ultimately, in 2018, PAM internally determined it was cost prohibitive to develop its own software and re-signed with Meridian.  See Exhibit C, ¶ 5. KMG, however, in concert with PAM, clearly knew it was utilizing Meridian's protected information, and it was patently misappropriation. Codified in 2013, under TUTSA, misappropriation" means both:

> (A) acquisition of a trade secret of another by a person who knows or **has reason to know that the trade secret** was acquired by improper means; or

> (B) disclosure or use of a trade secret of another without express or implied consent by a person who:

>> (i)  used improper means to acquire knowledge of the trade secret;

>> (ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

>>> (a) derived from or through a person who used improper means to acquire the trade secret;

>> (b)  acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or

13

(c)  derived from or through a person who owed a duty to the person seeking
relief to maintain the secrecy of or limit the use of the trade secret; or

(iii)  before a material change of the position of the person, knew or had reason to know
that the trade secret was a trade secret and that knowledge of the trade secret had been
acquired by accident or mistake.

TEX.CIV.PRAC&REM.CODE §134A.002(3).  Here, PAM entities knew, and at a minimum KMG

defendants should have known, of the misappropriation.  Acquired by improper means is

synonymous with accessing software technology that had been uploaded to a confidential portal

and that was the subject of a confidentiality agreement.  *Wellogix, Inc. v. Accenture, LLP*, 716

F.3d 867, 876 (5th Cir.2013). Further, PAM did not have the authority to disclose to KMG.  In

fact, Meridian had a fail-safe by requiring each user to obtain individual and sole-use credentials.

It should also be noted, under TUTSA, both "actual **or threatened misappropriation** may

be enjoined if the order does not prohibit a person from using general knowledge, skill, and

experience that person acquired during employment." TEX.CIV.PRAC &REM CODE.

§134A.003(a).  Further, courts have clearly found in the context of trade secret cases, "use"

means commercial use for the purpose of profit, including use likely to injure the secret's owner,

enrich the defendant, **or aid the defendant in its own research and development.** *Eagle Oil &*

*Gas Co., v. Shale Exploration, LLC,* 549 S.W.3d 256 (Tex.App—Houston [1[st]]). Defendants

were benefitting (or trying if they have not already accomplished), to use Meridian's software in

the development of their "own."

The software applications at issue are valuable assets,[3] and they have economic value to third

parties – which includes dozens of other hospitals managed by Meridian, and other software

---

[3] See Exhibit B, in whole, explaining the mining of development stages, and the knowledge
gained by the KMG and PAM entities to benefit and steal from Meridian.

developers.  PAM permitted a competitor developer access to Plaintiff's trade secrets to ascertain certain elements in order to re-create, reverse engineer or improperly use the software in other forms.  In simple words, PAM handed over the keys to the kingdom to Meridian's competitor, and shaved off years of Meridian's work for KMG's benefit.  The purpose was clear – to short circuit at least three of the development phases thereby saving millions of dollars. By providing direct access to Meridian's applications to an unauthorized user and competitor software development company, whose sole purpose was to build a comparable system, would dramatically decrease the amount of time required to replicate the application(s) functionality. See Exhibit B. Functionality that took Meridian years to plan, analyze, design and develop.  With access to a live production application as a sustainable model, building a comparable system would be immensely easier, faster, and drastically cheaper to develop and implement.   In summary, by providing this access, PAM and KMG benefitted from **completely eliminating the first three (of six) phases of the software development life cycle.** PAM and KMG misappropriated the access to the software and diluted the value of Meridian value. See Exhibit B. Even more egregious, is the dissemination of the information to a foreign country and the complete inability to track the dissemination of years of Meridian's work.

Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. Here, PAM and KMG's willful and malicious misappropriation is proven by clear and convincing evidence, and Meridian is entitled to exemplary damages.

### B.     BREACH OF CONTRACT AGAINST PAM ENTITIES

Plaintiff repeats and re-alleges the allegations in each of the foregoing paragraphs.

Plaintiff has fully performed its contractual obligations and has acted in accordance with the terms of the Services Agreement, attached as Exhibit A(1) and incorporated herein.

In June of 2018, Meridian and PAM executed a valid and enforceable written contract, attached as Exhibit A(1). The contract provided that Plaintiff would provide management and software services, and that PAM would pay for the service, provide its patients' data, and keep the software data confidential.  PAM breached the Agreement at the very least by:

    a.  Failing to keep its subscription to Pinpoint®, a MedNarrative and Q1 Health confidential in violation of Paragraph H of the Services Agreement;

    b.  Providing access to a competitor for reasons other than patient care as expressly prohibited by the Services Agreement;

    c.  Providing access to the software to a competitor;

    d.  Sharing user ID and Passwords with non PAM employees as expressly prohibited by the Services Agreement;

    e.  Providing screen shares to non-PAM employees.

PAM's breach caused injury to Plaintiff, which resulted in the following damages: actual damages, including loss due to misappropriation, unjust enrichment and alternately a reasonable royalty.

Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

<u>Attorney's fees.</u> Plaintiff is entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code Chapter 38 because this suit is for breach of a written contract. Plaintiff retained counsel, who presented Plaintiff's claim to PAM, and issued a cease and desist letter. Efforts ramped up to further misappropriate and act in opposition to the agreement, and now an injunction must be sought.

**C.**     **TORTIOUS INTERFERENCE BY KMG WITH PAM'S CONTRACT**

Plaintiff repeats and re-alleges the allegations in each of the foregoing paragraphs.

Plaintiff will show that the KMG defendants interfered with the contract between PAM and Meridian and agreed to wrongfully accept the User ID and password and violate the confidentiality provisions of the agreement.

Because such conduct was committed with actual malice, Plaintiff seeks exemplary damages.

**D.**     **CONSPIRACY TO MISAPPROPRIATE TRADE SECRETS BY ALL DEFEENDANTS**

Plaintiff repeats and re-alleges the allegations in each of the foregoing paragraphs.

All Defendants conspired to misappropriate trade secrets and to improperly reverse engineer the software.

Such misappropriation was a proximate cause of the damages to Plaintiff, for which it now sues.

Such actions were with actual malice, and Plaintiff seeks exemplary damages.

**E.**     **UNFAIR COMPETITION**

Plaintiff repeats and re-alleges the allegations in each of the foregoing paragraphs.

Plaintiff's common law claim for unfair competition by misappropriation was not preempted by the Texas Uniform Trade Secrets Act (TUTSA), as it could recover on that claim without proving that the information was protected as trade secrets. *Amid, Inc. v. Medic Alert Found. United States*, Inc., 241 F. Supp. 3d 788, 2017 U.S. Dist. LEXIS 37699 (S.D. Tex. 2017). Defendants' acts, as described herein, are illegal pursuant to the meaning found in Texas jurisprudence. These illegal acts constitute independent torts, including

Defendants' wrongful conduct in violation of Plaintiff's statutory and common law rights in its trademarks for the software for eVAL™ and Pinpoint®.

### F.     QUANTUM MERUIT

Plaintiff repeats and re-alleges the allegations in each of the foregoing paragraphs.

In the alternative, PAM accepted the services of Meridian and access to the software to Meridian's competitor.

As a result, Meridian seeks damages within the jurisdictional limits of the court.

### G.     PROMISSORY ESTOPPEL

Plaintiff repeats and re-alleges the allegations in each of the foregoing paragraphs.

In the alternative, PAM made a promise to Plaintiff that PAM did not keep.

As a result, Meridian seeks damages within the jurisdictional limits of the court.

### H.     EQUITABLE RELIEF

Plaintiff repeats and re-alleges the allegations in each of the foregoing paragraphs.

In the alternative to monetary damages, Plaintiff seeks the equitable relief of rescission of the contract.

As a result, Meridian seeks damages within the jurisdictional limits of the court.

### I.     CONDITIONS PRECEDENT

All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

### VIII.   TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

Plaintiffs' application for a temporary restraining order is authorized by TEX. CIV. PRAC. & REM. CODE § 65.011(1), (5).  An injunction is required to preserve the subject matter of the suit.  Plaintiff shows the Court:

a.   A confidential relationship existed by contract and the disclosure of trade secrets.

b.   Meridian determined that PAM violated the user agreement and disclosed confidential information to a non-authorized user.

c.   PAM continues to use the trade secret and disclose it to a competitor evidenced by simultaneous logins in India and Pennsylvania – namely KMG and its office in India.

d.   Harm is imminent and probable as the Chief Executive Officer stated that he will continue to build the software on their own.

e.   Meridian suffers and will continue to suffer irreparable harm if PAM retains access to the software and discloses it in contradiction to the Services Agreement and User Agreement to competing software developers.

PAM is in clear breach of the Services Agreement at issue. It is probable that Plaintiff will recover from PAM and KMG after a trial on the merits because of Defendants' breaches and misappropriations of trade secrets. Defendants are wasting assets of Meridian, and de-valuing the nine years of development, and such conduct continues today, and will continue without equitable relief. Restraint is necessary to protect and preserve the subject matter of the pending litigation. If Plaintiffs' application is not granted, **harm is imminent** because collectively these Defendants are using improperly acquired trade secrets and attempting to reverse engineer and determine the source code of the protected trade secret.  Harm exists, and will continue to exist, if the temporary restraining order is not issued. Such **harm is irreparable** because Plaintiff cannot be adequately compensated in damages for the release of its trade secret and Defendants assets may be depleted and unable to pay the damages. **Plaintiff thus has no adequate remedy at law.**

Plaintiff asks the Court to *ex parte* restrain Post Acute Medical, LLC, PAM Physician Enterprise, Clear Lake Institute for Rehabilitation, LLC and Key Management Group, Inc. ("Defendants") from the following:

a.   This Court shall restrain these Defendants without notice because of their intentional, unauthorized and repeated disclosure of confidential information in

violation of the Services and Business Associate Agreement and User Authorization to Plaintiff's competitor KMG.  PAM and KMG are  ordered to stop any and all development either internally or a third party software developer all applications that incorporate Meridian's confidential and proprietary information in any form.

b.   This Court shall hereby restrain Defendants from accessing, using, utilizing, copying, studying, sharing, screen sharing and generating reports of any and all Meridian Software (in any form whether captured by screenshot, document, whether electronic or otherwise, for any and all purposes, including to study, copy, duplicate, or replicate in order to prevent further sharing of the protected trade secrets or confidential information.

c.   KMG and PAM shall immediately remove, delete, and stop any further dissemination by electronic or other means of protected health information and Meridian's confidential information by Rajesh Sahu, KMG, PAM,  or any other PAM or KMG affiliate, employee or affiliate.

d.    KMG and PAM are prohibited from any use, internal development, or dissemination of any information contained in the PAM/KMG Statement of Work, including the incorporated PAM requirements containing Meridian's confidential and proprietary information.

e.   KMG and PAM is prohibited from all use and dissemination of confidential and proprietary information obtained through KMG's unauthorized access to Meridian's applications by Harinder Bhatia, Rajesh Saju or any other KMG employee or affiliate.

f.   KMG shall immediately remove, delete, and stop any further dissemination of the Discharge Calendar, Discharge Tracker, Follow up Calendar, or any other Meridian application including any description of the logic, function, or other confidential and proprietary information under the SBAA by its employee Rajesh Sahu.

g.   This Court orders Defendant PAM to pay a reasonable monthly royalty rate in the amount of $59,300, beginning July 1, 2019 based on the contractual fee for access and the ongoing saved development cost based on the market value for the use of the software pending a full determination on the merits, until the temporary injunction is resolved for the misappropriation, theft and sharing of the trade secret with Meridian's competitor, and potentially other improper users.

h.   This Court shall order Defendants not to alter, destroy, or change any developments made to copy, research, analyze or otherwise try to reverse engineer the software.

    i.  Plaintiff's trade secrets are being threatened and are actively being disclosed to third parties who have not signed a User Agreement, and are in direct competition with Plaintiff.  Defendants are not using the software for proper means, i.e. patient care, but to develop its own software directly or through third parties.

    f.  The Temporary Restraining Order will expire on a certain date.

    g.  The Temporary Injunction hearing will occur on a certain date.

    h.  The amount of the bond will be set for a certain amount.

Harm is a probable, imminent, and irreparable injury in the interim. It cannot be ascertained the name or amount of other unauthorized users who have documented Meridian's software. Plaintiff has no adequate remedy at law and cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard as the trade secrets have been shared to a competitor, Defendant KMG and potentially other developers. The only use permitted was patient care.  Defendants have utilized the software for improper and personal gain and must be prohibited.

Plaintiff is willing to post bond.

There is insufficient time to serve notice on Defendants and to hold a hearing on this application.  Defendants may change, alter, repair or destroy the relevant corporate records, unless the Court enters Temporary Restraining Order, restraining the Defendants from changing, altering, or destroying them.  In order for Plaintiff to properly investigate all claims, this Court should restrain Defendants, its agents, servants, employees, contractors, contract employees, attorneys and those acting in concert with Defendants.

## X.    **REQUEST FOR DISCLOSURE**

Under Texas Rule of Civil Procedure 194, plaintiff requests that Defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## IX.    <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues triable as of right by a jury. Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

### PRAYER

For these reasons, Plaintiff asks that the Court issue citation for defendants to appear and answer, and that Plaintiff be awarded a judgment against defendant for the following:

a.    That the Defendants be restrained as set forth herein;

b.    That a hearing on Plaintiff's Request for Temporary Restraining Order and Injunction be held;

c.    Prohibitive and/or royalty-order injunction be issued;

d.    Actual and Exemplary damages.

e.    Injunctive relief.

f.    Prejudgment and post-judgment interest.

g.    Court costs.

h.    Attorney fees.

i.    All other relief to which Plaintiff is entitled.

Respectfully submitted,

## THE BUZBEE LAW FIRM

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
State Bar No. 24001820
tbuzbee@txattorneys.com
Caroline E. Adams
State Bar No. 24011198
cadams@txattorneys.com
Tel: (713) 223-5393
Fax: (713) 223-5909
www.txattorneys.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been duly served on all known counsel of record and pro se parties in accordance with the Texas Rules of Civil Procedure on June 26, 2019 via e-service and notice is hereby given.

*/s/ Caroline Adams*
Caroline E. Adams

## EXHIBIT A

### CAUSE NO. 2019-23790

| | | |
|---|---|---|
| **MERIDIAN HOSPITAL** | § | **IN THE DISTRICT COURT** |
| **SYSTEMS CORPORATION** | § | |
| | § | |
| **Plaintiff,** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **VS.** | § | |
| | § | |
| **POST ACUTE MEDICAL, LLC,** | § | **11th JUDICIAL DISTRICT** |
| **PAM PHYSICIAN ENTERPRISE,** | § | |
| **CLEAR LAKE INSTITUTE FOR** | § | |
| **REHABILITATION, LLC** | § | |
| **KEY MANAGEMENT GROUP, INC.** | § | |
| | § | |
| **Defendants.** | § | **JURY TRIAL DEMANDED** |

## VERIFICATION

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| DALLAS COUNTY | § |

Before me, the undersigned notary, on this day personally appeared Christopher the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

"My name is Christopher LeBlanc I am capable of making this verification. I have read Plaintiff's Amended and Verified Petition and Application for Temporary Restraining Order and Temporary Injunction and the facts stated in it are within my personal knowledge and are true and correct."

CHRISTOPHER LEBLANC

Sworn and subscribed before me on _____June 26_____, 2019.

Notary Public in and for the State of Texas

JOSEPH TASSE
My Notary ID # 130858892
Expires October 11, 2020

My commission expires: _10/11/2020_