# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| POST ACUTE MEDICAL, LLC, | : | 1:19-cv-1137 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER LEBLANC and | : | |
| MERIDIAN HOSPITAL SYSTEMS | : | |
| CORPORATION, | : | |
| Defendants. | : | |

## **MEMORANDUM**

September 16, 2019

Presently pending before the Court is Defendant Christopher LeBlanc's and Defendant Meridian Hospital Systems Corporation's Amended Motion to Dismiss. (Doc. 21). The matter has been fully briefed, (Docs. 22, 25, 26), and is ripe for disposition. For the reasons that follow, the Motion shall be granted.

### I. BACKGROUND

In accordance with the standard of review applicable to a motion to dismiss, the following facts are derived from Plaintiff's amended complaint and are viewed in the light most favorable to it.

Plaintiff Post Acute Medical, LLC ("PAM") is a healthcare provider that owns and operates long-term care hospitals. (Doc. 20 at ¶ 8). In 2013, PAM contracted with Defendant Meridian Healthcare Intelligence ("Meridian") for

1

Meridian to provide it with a user-friendly recordkeeping system.  (*Id*. at ¶ 11).
Because this arrangement necessarily required Meridian to access PAM's patient
data, Meridian agreed to comply with HIPAA requirements and to safeguard
PAM's confidential data.  (*Id*. at ¶ 12–17).  Meridian also agreed that all of the data
it would access or create belonged to PAM and that said data would be returned to
PAM upon request or upon termination of the business relationship.  (*Id*. at ¶ 20).

Over the next several years, PAM experienced issues with Meridian's
performance.  (*Id*. at ¶¶ 24–40).  By 2018, PAM expressed its desire to develop and
execute its own platform.  (*Id*. at ¶ 41–42).  Not wanting to lose PAM's business,
however, Meridian offered PAM an equity interest in the company in exchange for
a long-term contract.  (*Id*. at ¶ 45).  Nonetheless, before that deal was finalized,
Meridian and PAM agreed to a one-year extension, memorialized in what the
parties refer to as the Business Associate Addendum ("BAA").  (*Id*. at ¶ 46–49).
The BAA was signed by PAM and Meridian and was personally guaranteed by
Defendant Christopher LeBlanc ("LeBlanc"), Meridian's majority owner.  (*Id*. at ¶
50).  Relevant to the instant motion, the BAA reiterated many of the limitations
outlined in the parties' initial contract, including Meridian's obligation to
safeguard PAM's data.  (*Id*. at ¶ 51–62).

On February 28, 2019, PAM notified Meridian that it did not intend to renew
its agreement and made clear that Meridian should return all of PAM's sensitive

data at or before the conclusion of the agreement's term. (*Id*. at ¶ 64). A series of failed negotiations to continue the relationship ensued, to no avail. (*Id*. at ¶¶ 67–71).

Shortly after the parties recognized that no further agreement would be reached, Meridian sued PAM and several of its Texas affiliates in Texas state court, alleging that PAM had tried to undercut Meridian by hiring an independent firm to reverse engineer Meridian's product. (*Id*. at ¶¶ 72–76). PAM and its Texas-based affiliates filed a motion to dismiss, which the Texas court denied. (*Id*. at ¶ 83). The matter is presently stayed pending PAM's appeal of that order. (*Id*.).

Notwithstanding the fact that Meridian was still contractually obligated to provide its services to PAM, on May 8, 2019, Meridian shut down PAM's access to its data, resulting in what PAM characterizes as a massive disruption of service. (*Id*. at ¶ 85–86). PAM demanded that Meridian restore service—for which it was still paying—and that Meridian immediately return PAM's stored data. (*Id*. at ¶ 88). Meridian responded to PAM's demand by insisting that it was not obligated to do so and that, in fact, it had the right to destroy it. (*Id*. at ¶ 90).

On May 15, 2019, PAM sent a second demand, (*id*. at ¶ 92), and, on May 24, 2019, PAM sent a third. (*Id*. at 95). On May 30, 2019, Meridian responded that it intended to destroy PAM's data on several of its platforms. (*Id*. at ¶ 97). Meridian demanded $8,500.00 before it would return the data that remained on its

other platforms. (*Id.*). On June 5, 2019, PAM's counsel verbally requested that LeBlanc specifically return the data. (*Id.* at ¶ 102). On June 10, 2019, PAM again demanded, in writing, the immediate return of its data. (*Id.* at 103). In response, Meridian again threatened to destroy it. (*Id.* at 104).

On June 26, 2019, Meridian sought a temporary restraining order in Texas state court against Key Management Group, Inc., a co-defendant in Meridian's initial law suit. (*Id.* at ¶ 107). During a hearing on the matter, Meridian's counsel mentioned that LeBlanc had used its servers to access PAM's sensitive data. (*Id.* at ¶¶ 108–112). Specifically, PAM contends, LeBlanc had accessed the database to confirm the identity of an individual that was being discussed at the hearing.

On July 17, 2019, PAM notified Meridian and LeBlanc that it intended to enforce provisions of the BAA which authorized PAM to monitor Meridian's compliance therewith. (*Id.* at ¶ 116–120). Meridian did not respond to PAM's request but instead asserted that the BAA was terminated and that Meridian was under no obligation to comply with it absent a court order. (*Id.* at ¶¶ 121–122).

On July 2, 2019, PAM filed a three-count complaint against Meridian and LeBlanc in this Court. (Doc. 1). The following day, PAM filed a Motion for Temporary Restraining Order and a brief in support thereof. (Docs. 4, 5). On July 9, 2019, the Court held a telephonic status conference after which the parties agreed to a stipulated Order mandating that Meridian and LeBlanc retain all of

PAM's data in its current form and precluding Meridian and LeBlanc from destroying, deleting, copying, using, mining, accessing, or distributing that data. (Doc. 15). This stipulated Order denied PAM's motion for temporary restraining order without prejudice. (*Id*.). On July 25, 2019, Meridian and LeBlanc filed a motion to dismiss and a brief in support thereof. (Docs. 17, 19).

On August 8, 2019, PAM filed an amended complaint, the operative complaint in this case. (Doc. 20). In Count I, PAM avers that Meridian and LeBlanc violated the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, by misappropriating PAM's confidential customer and vendor data. (Doc. 20 at ¶ 133). In connection therewith, PAM specifically avers that, this customer and vendor data "qualifies for trade secret protection under the Defend Trade Secret Act," (*id*. at ¶ 139), and that "the sole copy [of the data] resides on Meridian's servers." (*Id*. at ¶ 133). In Count II, PAM contends that Meridian and LeBlanc violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, by exceeding the scope of their authorized access of PAM's data when they accessed the database in open court. (*Id*. at ¶ 157). In Count III, PAM alleges that Meridian breached the BAA by failing to safeguard PAM's data and by accessing it, using it, and disclosing it for an unauthorized purpose. (*Id*. at ¶ 163).

On August 12, 2019, Meridian and LeBlanc (collectively, "Defendants") filed the instant Amended Motion to Dismiss, seeking to dismiss PAM's amended

complaint in its entirety. (Doc. 21). Among other arguments, Defendants aver that Pennsylvania is an improper venue. Because we agree, we shall grant Defendants' motion and dismiss PAM's amended complaint without prejudice to refile in an appropriate venue.[1]

## II. DISCUSSION

In their motion and accompanying briefs, Defendants argue that PAM's amended complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(3) because venue is improper in Pennsylvania. According to Defendants, no Defendant resides in Pennsylvania and "no part of PAM's claim occurred in Pennsylvania." (Doc. 22 at 7). Specifically, Defendants aver, the BAA states that it was executed and delivered in Texas, there is currently a breach of contract action between the parties pending in Texas state court, and, taking PAM's factual averments as true, all of the wrongdoing at issue was allegedly perpetrated by Defendants in Texas inasmuch as the confidential information at issue "originated from PAM's Texas hospitals, involves Texas patients, including an elderly Texas woman's specific information from the PAM-Allen (Texas) location, and an alleged disclosure inside a Texas court." (Doc. 26 at 10). Indeed, Defendants contend, no Defendant in this case has travelled to Pennsylvania in over a year, the prospective third-party

---

[1] Because we find that Pennsylvania is the improper venue for this case, and shall dismiss PAM's amended complaint on that basis, we address only Defendants' arguments as to venue.

6

witnesses all live in Texas, the administrative witness that PAM could potentially call in support of its claim lives in Ohio, and most of PAM's nationwide facilities are located in Texas. Further, Defendants reason, "[t]he alleged disclosure [of PAM's confidential information] was directly in response to PAM and its co-conspirator disclosing PAM and Meridian's confidential information during Court proceedings" in Texas involving a Texas patient. (Doc. 26 at 9). Accordingly, neither "a substantial part of the events or omissions giving rise to [PAM's claims]" nor "a substantial part of property that is the subject of the action is situated" in Pennsylvania, and PAM's amended complaint must be dismissed for improper venue. In short, Defendants contend, even if PAM has alleged some tangential relationship to Pennsylvania by virtue of the fact that it is domiciled in Pennsylvania, "[v]enue is 'determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts.'" (Doc. 26 at 8 (quoting *Leone v. Cataldo*, 574 F.Supp.2d 471, 484 (E.D. Pa. 2008)). "Events or omissions that might only have some tangential connection with the dispute in litigation are not enough." (*Id.* at 8 (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)).

In response, PAM contends that venue is proper in Pennsylvania and that Defendants' arguments "rely largely on untenable denials of their extensive

7

contacts to and interactions with PAM in Pennsylvania, and false claims that the lawsuit in Texas is the same as this lawsuit." (Doc. 25 at 10). According to PAM, a plaintiff's choice of venue should be given great weight and "[t]he fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too." (Doc. 25 at 10 (quoting *Leone*, 574 F.Supp.2d at 484)).

In this case, PAM avers, Defendants entered into a contract with PAM knowing that it was domiciled in Pennsylvania and regularly visited and communicated with PAM employees over the course of six years. Moreover, PAM argues, the trade secret at issue in Count I was "created" in Pennsylvania and jurisprudence in the Third Circuit "routinely recognize that venue is proper in the district in which the trade secret originated, even if the defendant misappropriated the trade secret elsewhere." (Doc. 25 at 11 (citing *Horne v. Adolph Coors Co.*, 684 F.2d 255, 259 (3d Cir. 1982); *Paul Green Sch. of Rock Music Franchising, LLC v. Rock Nation, LLC*, No. 08–cv–4503, 2009 WL 129740, at *1 (E.D. Pa. 2009); *Goddard Systems, Inc. v. Overman*, Civ. A. No. 12– 5368, 2013 WL 159933, at *4 (E.D. Pa. Jan. 14, 2013)).

Moreover, PAM explains, "even without the [Section 1391] factors, venue would be proper in this District because Defendants reached into this District to do business, thus accepting the Court's personal jurisdiction over them. (Doc. 25 at 12

8

(citing 28 U.S.C. § 1391(c); *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 58 (2013)). In closing, PAM asserts, even if Texas would be a more "at home" forum for Defendants, such a view does not render Pennsylvania an improper venue. (Doc. 25 at 12 (citing *McCraw v. GlaxoSmithKline*, No. 12–2119, 2014 WL 211343, at *4 (E.D. Pa. Jan. 17, 2014); *Bent Glass Design v. Scienstry, Inc.*, Civ. No. 13–4282, 2014 WL 550548 (E.D. Pa. Feb. 12, 2014); *Constr. Specialties, Inc. v. Ed Flume Bldg. Specialties, Ltd.*, 05–CV–1863, 2006 WL 42181, *5 (M.D. Pa. Jan. 6, 2006)). We disagree.

> Under 28 U.S.C. § 1391(b), a civil action may be brought in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). In the instant case, it appears uncontested that the none of the Defendants reside in Pennsylvania.

"The Third Circuit Court of Appeals has made clear that acts or omissions must be more than tangentially connected to qualify as 'substantial.'" *Siegel v. Homestore, Inc.*, 255 F.Supp.2d 451, 455 (E.D. Pa. 2003). "[S]ubstantiality is intended to preserve the element of fairness so that a defendant is not haled into a

9

remote district having no real relationship to the dispute." *Id*. (quoting *Dollar Discount Stores of America, Inc. v. Petrusha*, Civ. A. No. 01–384, 2001 WL 881725 (E.D. Pa. 2001)). Thus, "[t]he test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Cottman Transmission Sys., Inc.*, 36 F.3d at 294. "Although [Section 1391] no longer requires a court to select the 'best' forum, the weighing of 'substantial' may at times seem to take on that flavor." *Id*.

Even taking all of Plaintiff's factual averments as true—as is our duty at thus juncture—it does not appear that a substantial part of the events or omissions giving rise to the claim occurred in Pennsylvania, or that a substantial part of property that is the subject of the action is situated in Pennsylvania. PAM does not appear to contest that the BAA was executed and delivered in Texas, that there is currently a breach of contract action between the parties pending in Texas state court, that no Defendant in this case has travelled to Pennsylvania in over a year, that the prospective third-party witnesses all live in Texas, that most of PAM's facilities are located in Texas, or that the alleged access and disclosure of information occurred in a Texas courtroom and involved a Texas-based patient.

We are unpersuaded by PAM's contention that venue is appropriate in Pennsylvania simply because Defendants maintained business contacts in

10

Pennsylvania. Although relevant to jurisdiction, the Third Circuit has expressly noted that contacts with a specific state for purposes of demonstrating personal jurisdiction are insufficient to render venue proper. *See Cottman Transmission Sys., Inc.*, 36 F.3d at 294 ("The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'"). We are also unpersuaded that venue is appropriate in Pennsylvania simply based upon PAM's conclusory assertion that the trade secrets that Defendants have allegedly misappropriated were "created" in Pennsylvania. (Doc. 25 at 11). Although we acknowledge that federal courts in Pennsylvania have found that the venue in which a trade secret was created constitutes an appropriate venue for litigating misappropriation of that trade secret, PAM has failed entirely to provide any basis for us to conclude that the trade secrets at issue were actually created in Pennsylvania in light of the surrounding circumstances. First, PAM does not assert anything related to the creation of the trade secrets at issue in its amended complaint. Second, PAM does not contest Defendants' assertion that a majority of its facilities are located in Texas or that it is incorporated in Delaware. Thus, we cannot conclude that the misappropriated trade secret at issue was necessarily keyed in by an employee located in PAM's Pennsylvania home office. This is particularly true because PAM does not contest that the misappropriated information concerned a Texas-based patient at a Texas-

based facility.  Moreover, in its amended complaint, PAM specifically avers that "the sole copy [of the data it alleges was misappropriated] resides on Meridian's servers," which we can only assume are not in Pennsylvania.  (*Id*. at ¶ 133).  Therefore, we cannot conclude that the information is currently stored in Pennsylvania.  Accordingly, PAM's generalized assertion that the data at issue was "created" in Pennsylvania simply because its main office is here is insufficient, in and of itself, to render Pennsylvania an appropriate venue in light of the surrounding circumstances.

As Defendants note, venue is a qualitative analysis that is "determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts."  *Leone*, 574 F.Supp.2d 483.  Performing such a qualitative analysis on the facts of the instant case makes clear that Pennsylvania is not a proper venue.  Although we appreciate that a plaintiff's choice of forum is given great weight, we find that PAM has failed entirely to provide any basis for us to determine that a substantial part of the events or omissions giving rise to the claim occurred in Pennsylvania, or that a substantial part of property that is the subject of the action is situated in Pennsylvania.  The events, omissions, or property giving rise to the instant claims are at best only tangentially related to Pennsylvania.  Accordingly,

we find venue inappropriate in Pennsylvania and PAM's complaint shall be dismissed without prejudice to refile in an appropriate jurisdiction.

## III. CONCLUSION

In accordance with the foregoing, Defendants' Amended Motion to Dismiss, (Doc. 21), shall be granted. An appropriate Order shall follow.